640 P.2d 861
**STATE of Arizona, Appellee,**

v.

**Therron A. JOHNSON, Appellant.**

No. 5239.

Supreme Court of Arizona,
In Banc.

Jan. 18, 1982.
Rehearing Denied Feb. 17, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Eleanor L. Miller, Phoenix, for appellant.

STRUCKMEYER, Justice.

Defendant pled guilty to the crime of solicitation to commit murder, a class 3 felony under A.R.S. § 13–1002(B)(1). He appeals from the judgment of guilt and the sentence of imprisonment for eight years. This Court has jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

In May, 1979, appellant, then a resident of Oregon, entered into a contract for hauling timber with one Richard Rice. A dispute arose regarding the time of payment and the amount appellant owed Rice. As a result, Rice made repeated threats against appellant's life if the money was not paid. Because of these threats, often made in the presence of third parties, appellant left his home in Oregon and with his wife and child settled at Lake Havasu City, Arizona. He learned, however, through phone conversations with relatives and friends in Oregon, that Rice had discovered where he was working and was told that Rice was still coming after him.

At about this same time, appellant hired Harold Covey as a driver for one of his trucks. In a conversation with appellant, Covey said: "I know a way to eliminate that problem." Thereafter, Covey suggested a plan to which appellant assented. As a result of that conversation, Covey went to Oklahoma, where he sought to purchase explosives from two men who, unbeknownst to him, were undercover agents for the Bureau of Alcohol, Tobacco, and Firearms. Covey arranged for appellant to contact the undercover agents. Appellant and the agents met in Lake Havasu City, at which time they agreed the price for killing Rice was to be $5,000. They also agreed that if it became necessary to kill Sharon Morgan, Rice's girl friend, appellant would pay another $1,000. To the possibility that Ms. Morgan's four-year-old son, Joshua, might also have to be killed, appellant replied that he would not like to see it happen but that, "if they needed to," it should be done.

Appellant approved of the agents' plan to accomplish the killings by means of explosives to be detonated by remote control. Appellant paid the agents an advance of $2,500, and the agents left, ostensibly to carry out the homicides. Upon their return, the agents informed appellant that they had killed Rice, Sharon, and Joshua. Appellant then paid the agents $3,500, leaving $1,000 as a balance due, with assurances that the remainder would be paid shortly. Appellant was arrested and charged with conspiracy to commit murder, A.R.S. § 13–1003. Pursuant to a plea agreement, the conspiracy charge was dismissed and appel-

lant pled guilty to solicitation to commit murder. A.R.S. § 13–1002. A.R.S. § 13–1002(A) provides:

"A. A person, other than a peace officer acting in his official capacity within the scope of his authority and in the line of duty, commits solicitation if, with the intent to promote or facilitate the commission of a felony or misdemeanor, such person commands, encourages, requests or solicits another person to engage in specific conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission."

Appellant raises the following issues on appeal:

1. Did the trial judge err in finding aggravating circumstances under A.R.S. § 13–702(D)(2), (4), and (5)?

2. Did the trial judge improperly fail to find additional mitigating factors?

3. Were improper matters considered during the sentencing proceedings?

4. Did the mitigating circumstances outweigh the aggravating circumstances?

## AGGRAVATING CIRCUMSTANCES

Appellant contends the trial judge erred in finding an aggravating circumstance under A.R.S. § 13–702(D)(2). This section requires the sentencing court to consider as an aggravating circumstance the "[u]se, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime." *Id.*

■ The following statement by the sentencing judge sets forth the basis for his finding of this aggravating circumstance:

"[T]here is the use or threatened use for [sic] possession of a deadly weapon or

dangerous instrument during the commission of the crime. That wasn't the crime of solicitation that was committed as your counsel said at the time that discussion between you and the officers was taking place, but *implicit in that discussion was the fact that dangerous dynamite or explosives was to be used, which is the actual dangerous or deadly weapon or dangerous instrument of the statute.*" (Emphasis added.)

The court therefore considered that the crime which was being solicited *would have* involved the use of a deadly weapon or dangerous instrument. This is clearly erroneous. Under the language of the statute, the court must determine whether the aggravating circumstance existed "during the commission of the crime." A.R.S. § 13–702(D)(2). The crime for which appellant was sentenced was solicitation. The crime was completed when appellant, with criminal intent, communicated with the undercover officers.[1] While it is conceivable that a deadly weapon or dangerous instrument could be used in the commission of the offense of solicitation, such circumstances simply were not present in this case.

Appellee argues that when a court sentences an individual for the crime of solicitation it may consider not only the solicitation itself, but also the object of the solicitation. Under the criminal code, it is the object of the solicitation that gives the communication its criminal character—the more dangerous the object of the solicitation, the more dangerous the solicitation itself. By A.R.S. § 13–1002(B), the severity of the penalty for solicitation is correlated to the gravity of the crime solicited—the more reprehensible the object of the solicitation, the more severe the punishment for the solicitation. The sentencing court is re-

---

1. *See* W. LaFave & A. Scott, Handbook on Criminal Law (1972):

"For the crime of solicitation to be completed, it is only necessary that the actor, with intent that another person commit a crime, have enticed, advised, incited, ordered or otherwise encouraged that person to commit a crime. The crime solicited need not be committed." *Id.* at 414.

Furthermore,

"[T]he crime of solicitation requires no agreement or action by the person solicited, and thus the solicitation is complete when the solicitor, acting with the requisite intent, makes the command or request." *Id.* at 420.

quired to consider the object of the solicitation in determining the applicable sentence. But under the statute, the crime of solicitation is not aggravated when the solicitation is made without the use, threatened use, or possession of a deadly weapon or dangerous instrument. The aggravating circumstance of A.R.S. § 13–702(D)(2) was not present in this case.

Appellant asserts that the sentencing court also believed the solicitation of the two undercover officers provided a basis for finding, under A.R.S. § 13–702(D)(4), that appellant's offense was aggravated by the presence of an accomplice.

The presence of an accomplice aggravates a defendant's offense under A.R.S. § 13–702(D)(4) for two reasons. First, a defendant who is willing to join with others in criminal activity evidences a more dangerous disposition than one who does not.[2] Second, the presence of more than one perpetrator increases the dangerous nature of the offense itself.[3]

 Appellant argues that under A.R.S. § 13–301, peace officers acting in their official capacity within the scope of their authority and in the line of duty are excluded from the definition of accomplice. We do not think, however, that this statute has a direct bearing on the issue of aggravation. The obvious purpose for the exclusion is to exempt peace officers from criminal liability when they participate in a course of action designed to result in the apprehension of known or suspected criminals.

For purposes of enhancing a defendant's sentence under A.R.S. § 13–702(D)(4), the inquiry is not whether the coparticipant could be held liable as an accomplice under A.R.S. § 13–301. Rather, the sentencing court should look to the objective circumstances as well as defendant's state of mind. A finding of an aggravating circumstance under A.R.S. § 13–702(D)(4) is proper where: (a) From an objective standpoint, the dangerous nature of the offense was increased because of the actual presence or participation of multiple perpetrators; or (b) at the time of the commission of the offense, defendant believed he was acting in concert with another, whether the other was either excluded by A.R.S. § 13–301 or merely feigned agreement. From an objective standpoint, the dangerous nature of the offense was not increased by the presence of the officers.

Nor can it be said that appellant was acting in concert with the officers when the solicitation took place. Although appellant sought their participation in the object of the solicitation—the murders—this was not true with respect to the solicitation itself. We find that the undercover officers were not appellant's accomplices to the solicitation for purposes of A.R.S. § 13–702(D)(4).

 The sentencing court also considered Covey's participation relevant in its determination that appellant committed the solicitation with the presence of an accomplice. But it is not clear from the record whether the court determined that Covey

2. It is believed that one who acts in concert with others is less likely to renounce his criminal purpose than one who entertains a purely personal decision. See, e.g., W. LaFave & A. Scott, Handbook on Criminal Law 459–60 (1972) (citing Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 924 (1959)).

"In the course of preparation to commit a crime, the act of combining with another is significant both psychologically and practically, the former since it crosses a clear threshold in arousing expectations, the latter since it increases the likelihood that the offense will be committed. Sharing lends fortitude to purpose. The actor knows, moreover, that the future is no longer governed by

his will alone; others may complete what he has had a hand in starting, even if he has a change of heart. ALI, Model Penal Code § 503, Comment (Tent. Draft No. 10, 1960)."

3. In *Callanan v. United States*, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961), the Court stated:

"Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish * * *. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed." *Id.* at 593–94, 81 S.Ct. at 325.

was an accomplice, although from the facts it is clear he was. At the time of sentencing, the court stated:

"Next, I find the presence of an accomplice. The two officers were going to be accomplices of one another in committing the offense. They were going to be an accomplice of yours. *You also had Mr. Covey involved in the circumstance, this on-going situation.*" (Emphasis added.)

The record is abundant with evidence that Covey was an accomplice. For example, at the aggravation-mitigation hearing, appellant testified:

"I told [Covey] that there was a fellow [in Oregon] that gave me a problem and I can't go back up there.

[Covey] suggested to me, 'I know a way of eliminating that problem', and we talked about it.

Then he disappeared and came back three days later, and he said, 'I need to talk to some people in Oklahoma City. Can I use your phone?'

He made a phone call in my office to Oklahoma City, and he said, 'I'm going to Oklahoma City to talk to some people about your problem.'

He went to Oklahoma City, I guess. I got a phone call from there a little later. Then he gave me a phone number to call. He said, 'These are people that can take care of your problem. Would you give them a call?'"

We conclude that there was sufficient evidence for the sentencing court to believe that Covey helped to promote appellant's criminal solicitation by aiding in contacting the agents.

■ The sentencing judge also found that the offense was committed in an especially heinous, cruel, or depraved manner, pursuant to A.R.S. § 13–702(D)(5). The basis for this finding is reflected in the following statement by the court at the time of sentencing:

"In sub-section 5 I find especially, cruel, or depraved manner in which this offense was committed. The solicitation probably wasn't committed in a heinous

manner * * * but here a blowing up of Mr. Rice, maybe that does fall within the thing.

Sharon Morgan, I would certainly say that blowing her up or killing her could be considered as especially cruel, heinous, or depraved, but I don't think anybody would doubt that the procuring of the killing of Joshua Morgan would fall within this class.

So, therefore, I find the existence of that aggravating circumstance.

The killing—the possible killing of Joshua Morgan makes my blood run cold, sir."

Appellant argues that finding this aggravating circumstance was error. We agree. Under A.R.S. § 13–702(D)(5), the sentencing court shall consider as an aggravating circumstance the "[e]specially heinous, cruel or depraved manner in which *the offense was committed.*" (Emphasis added.) The sentencing court must therefore focus on the offense that was actually committed. Appellant was convicted of solicitation, not murder. It was therefore error for the sentencing court to find this aggravating circumstance by considering the manner in which defendant intended, desired, or acquiesced that the offense be carried out.

■ Our conclusion in this regard compels us to reject the State's argument that the court erroneously failed to find the aggravating circumstance of A.R.S. § 13–702(D)(1), that is, the "[i]nfliction or threatened infliction of serious physical injury." No serious physical injury was inflicted, nor was Rice personally threatened at the time the offense of solicitation was committed.

Appellant does not challenge the court's finding of the aggravating circumstance specified in A.R.S. § 13–702(D)(7): that "defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value."

The court also found as an aggravating circumstance appellant's prior felony conviction in 1972 for conversion of government property. The court could properly find this nonspecified aggravating circum-

stance pursuant to A.R.S. § 13–702(D)(9). That section allows the court to consider as aggravating circumstances "[a]ny other factors which the court may deem appropriate to the ends of justice." *Id.* Appellant does not claim this finding was erroneous and we find no error.

## MITIGATING FACTORS

■ Pursuant to A.R.S. § 13–702(E), the court found the existence of the following mitigating factors: That appellant was almost 53 years of age, that he was under substantial duress and fear of Rice, and that he had contacted law enforcement officers who expressed inability to protect him.

Appellant contends the court failed to consider his family ties and responsibilities, his military record, his good reputation in the community, and the testimony of witnesses that this act was very uncharacteristic of him. Appellant's contention is without merit. The sentencing judge listened to the mitigating evidence before him and apparently concluded that appellant's family ties, military record, and good reputation did not offset the seriousness of appellant's murderous design. We find no error in this regard.

■ However, the court erred in finding that appellant's age was a mitigating factor.

Subsection one of A.R.S. § 13–702(E) provides that the court shall consider as a mitigating circumstance, "[t]he age of the defendant." The statute provides no clue as to when age becomes a mitigating circumstance.

Arizona's statutory scheme of presumptive sentencing, with its accompanying provisions for consideration of mitigating and aggravating circumstances, was derived from Twentieth Century Fund—Task Force on Criminal Sentencing, Fair and Certain Punishment (1976). *See* R. Gerber, Criminal Law of Arizona 88–95 (1978). The standard suggested by the Twentieth Century Fund reflects what a sentencing court's inquiry should be in determining whether age is an appropriate mitigating circumstance

under A.R.S. § 13–702(E)(1): "The defendant, because of his youth or old age, lacked substantial judgment in committing the crime." Twentieth Century Fund, supra at 45. Since appellant was 52 years of age at the time he committed the offense, and there is no evidence that as a result of his age he lacked the substantial judgment of a normal person, it cannot be said that his age was an appropriate mitigating circumstance.

## SENTENCING PROCEEDINGS

■ Appellant challenges the sentencing court's consideration of several matters included in the presentence reports. He first claims the court improperly considered the "scurrilous, unsworn hearsay statements" of the intended victims, Rice and Ms. Morgan. Appellant recognizes that, in determining the applicable sentence, the judge may consider any reliable, relevant evidence, including unsworn testimony and out-of-court statements. *State v. O'Donnal,* 110 Ariz. 552, 555, 521 P.2d 984, 987 (1974) (citing *Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959)); Rule 26.7(b), Rules of Criminal Procedure, 17 A.R.S. Nevertheless, appellant suggests the reports contained bias, sarcasm, and innuendo. We have reviewed the reports and find no merit to appellant's contention. Moreover, "[t]he weight to be given the [presentence] report is for the trial judge and we need not assume he was adversely influenced by any statement which might have been improper." *State v. Dixon,* 21 Ariz.App. 517, 519, 521 P.2d 148, 150 (1974).

We take note of appellant's failure to specify what statements by Rice and Morgan were scurrilous or unreliable. Appellant simply claims that, because the prosecutor did not bring Rice and Morgan to Arizona to testify, he was deprived of his right to cross-examine these persons. He directs our attention to *State v. Hanley,* 108 Ariz. 144, 493 P.2d 1201 (1972). In *Hanley,* the sentencing court had denied the defendant an opportunity to cross-examine the victims *after they had testified on direct examination.* Under these circumstances,

we held that the trial court erred. *Id.* at 148, 493 P.2d at 1205. The case does not alter the long-settled practice that at an aggravation-mitigation hearing, the rules governing admissibility of evidence at trial, including the right to confrontation, do not apply. *State v. Thomas,* 110 Ariz. 106, 109, 515 P.2d 851, 854 (1975). In the present case, as in *Thomas,*

"the defense was provided with the entire prosecution file * * * The defendant and his counsel were present at all stages of the aggravation hearing and were confronted personally with every piece of information directed against him. He was free to dispute them or produce any witness or other documentation to dispute the state's evidence. He had the right to show any evidence which would mitigate the seriousness of the crime of which he had been convicted. Under these circumstances there was no denial of defendant's right to a fair and impartial hearing." *Id.* at 109–10, 515 P.2d at 854–55.

Appellant finally contends the prosecutor improperly suggested at the hearing that a person by the name of Vern Morgan was involved in what happened and also that appellant wanted Rice's murder for some other reason than that to which he testified. Our conclusion from the record is that the court gave no undue weight to these suggestions, particularly in view of the court's express finding that appellant was acting under duress and fear of Rice.

Because of the number of erroneous matters considered at the sentencing proceeding, it is our conclusion that the sentence should be vacated and the cause remanded for resentencing. Since we are remanding for resentencing, appellant's argument that the lower court improperly balanced the aggravating and mitigating factors need not be considered.

Remanded for resentencing consistent with this decision.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.