956 P.2d 499 (1998)
191 Ariz. 359
STATE of Arizona, Respondent.
v.
Esgard YSEA, Petitioner.
No. CR-97-0065-PR.
Supreme Court of Arizona, En Banc.
April 2, 1998.
*501 Grant Woods, Arizona Attorney General Phoenix by Paul J. McMurdie, R. Wayne Ford, Phoenix, and Alan K. Polley, Cochise County Attorney by Vincent J. Festa, Bisbee, for State of Arizona.
Stanton Bloom, Tucson, for Esgard Ysea.

OPINION
FELDMAN, Justice.
¶ 1 In 1986, Esgard Ysea pleaded guilty to manslaughter and was sentenced to life imprisonment without possibility of parole for twenty-five years. Ten years later, Ysea brought a motion to vacate the plea on the grounds that his previous lawyer provided ineffective assistance, thus rendering his guilty plea involuntary. The trial judge denied the motion without a hearing, and the court of appeals affirmed. We granted review pursuant to Ariz. R.Crim. P. 32.9(9). We have jurisdiction under Ariz. Const. art 6, § 5(3).

FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 In September 1985, Ysea was charged with the first-degree murder of his estranged wife. At that time, Ysea was on probation for solicitation to commit aggravated assault. The state offered to let Ysea plead guilty to manslaughter, a class 3 felony, with a sentence of twenty-five years to life and without parole eligibility for the first twenty-five years. The prosecutor's written plea offer included a letter explaining that the manslaughter plea "would involve the imposition of the mandatory life sentence, but would avoid the possibility of the death penalty." The state also offered to dismiss a petition to revoke Ysea's probation on the solicitation conviction, which carried a presumptive two-year sentence. Ysea's lawyer advised him that if he should be convicted of first-degree murder, his solicitation conviction would be considered a prior violent felony under A.R.S. § 13-703, thus making him eligible for the death penalty. To avoid a death sentence, Ysea entered into the plea agreement on June 2, 1986.
¶ 3 In his 1996 petition for post-conviction relief, Ysea claimed that his attorney provided ineffective assistance when he mistakenly evaluated the prior solicitation as a statutory aggravator under A.R.S. § 13-703(F)(2). In an affidavit accompanying the motion, Ysea's former counsel stated that he and the prosecutor agreed that pleading guilty to manslaughter would allow Ysea to avoid a possible death sentence. Counsel advised Ysea to accept the plea because he believed it was the only way Ysea could avoid the death penalty. In his own affidavit, Ysea asserted that he wanted to reject the offer and go to trial as he felt he had nothing to lose. However, relying on counsel's advice, he accepted the manslaughter plea. The trial judge denied relief. The court of appeals affirmed, holding that under the status of the law in 1986, Ysea's counsel could have reasonably believed that the prior solicitation conviction would serve as an (F)(2) aggravating factor, thereby making Ysea eligible for the death penalty. State v. Ysea, No. 2 CA-CR 96-0109-PR (Jan. 9, 1997, memorandum decision), at 6.
¶ 4 We granted review to consider two questions:
1. Was it reasonable in 1986 for counsel to believe that a prior solicitation conviction could serve as an aggravating factor invoking the possibility of a death sentence on a first degree murder conviction?
2. Does a plea agreement made by a defendant based solely on such erroneous legal advice represent ineffective assistance of counsel rendering the plea involuntary and compelling its withdrawal?

DISCUSSION
A. The status of the law regarding the (F)(2) aggravating factor in 1986
¶ 5 The sentencing statute provides that when a defendant is convicted of first-degree *502 murder, the trial judge must weigh aggravating and mitigating factors to determine whether the applicable sentence is death or life imprisonment without the possibility of parole for twenty-five years. See A.R.S. § 13-703. If the judge finds one or more of the aggravating factors listed in § 13-703(F), the defendant is death eligible, and if the aggravating factors are not outweighed by mitigating factors listed in § 13-703(G), the resulting sentence is death. The only aggravating factor arguably applicable to Ysea was that he "was previously convicted of a felony in the United States involving the use or threat of violence on another person." § 13-703(F)(2).
¶ 6 The court of appeals held that in 1986 the law was not entirely clear whether Ysea's prior solicitation conviction could have qualified as an (F)(2) aggravating factor. Mem. dec. at 3-5. We disagree. As early as 1983, this court clearly announced the principle governing determination of whether a prior conviction would serve as such an aggravating factor. See State v. Gillies, 135 Ariz. 500, 662 P.2d 1007 (1983). Both Ysea's counsel and the state agree, in fact, that Gillies reflected the status of the law in 1986.
¶ 7 In Gillies we examined a trial judge's finding of an (F)(2) aggravating factor on a first-degree murder conviction. Gillies had a prior theft conviction. The victim had testified that Gillies used violence and threats to accomplish the theft. The trial judge therefore found the theft conviction to be an aggravating circumstance. On review, we reversed, holding that to determine the applicability of the (F)(2) aggravator, a trial judge must look only at the statutory definition of the crime of which the defendant was convicted, not the specific facts that led to the conviction. We emphasized that to qualify as an aggravator, the statutory definition must include violence or the threat of violence. 135 Ariz. at 511, 662 P.2d at 1018.
¶ 8 The court of appeals believed that this court did not crystallize case law on this point until 1989 in State v. Romanosky, 162 Ariz. 217, 782 P.2d 693 (1989). Mem. dec. at 4. However, in Romanosky, we quoted the holding in Gillies that "`to constitute an aggravating circumstance under A.R.S. 13-703(F)(2), the prior conviction must be for a felony which by its statutory definition involves violence or the threat of violence on another person.'" Id. at 227-28, 782 P.2d at 703-04 (quoting Gillies, 135 Ariz. at 511, 662 P.2d at 1018) (emphasis added in Romanosky). Romanosky emphasized the clear language of Gillies and cited numerous cases standing for the proposition that the court takes "judicial notice that some crimes are by definition, violent felonies." Id. at 227, 782 P.2d at 703 (emphasis in original). Romanosky created no new doctrine but merely reiterated the rule previously announced in Gillies.
¶ 9 Thus, as the law stood in 1986, Ysea's counsel should have examined only the statutory definition of solicitation to determine whether Ysea's previous conviction could support an (F)(2) finding. That statutory definition provided:
A person commits solicitation if, with the intent to promote or facilitate the commission of a felony or misdemeanor, such person commands, encourages, requests or solicits another person to engage in specific conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission.
A.R.S. § 13-1002. This definition does not require an act or even a threat of violence as an element for solicitation. Thus, under Gillies Ysea's prior conviction could not support an (F)(2) finding.
¶ 10 The state and the dissent claim, however, that a reasonable lawyer in 1986 might conclude that the intentional offense of solicitation could be connected with the underlying offense of aggravated assault so that solicitation would be considered a crime of violence. See Dissent at ¶ 25. There are several problems with this argument. We begin with the facts of the case: Ysea's lawyer did not look at the solicitation offense, did not connect it with the underlying offense, and did not attempt to rationalize the solicitation offense with the Gillies rule. This lawyer, in fact, did not do any research, was not aware of Gillies, and simply accepted at face value the prosecutor's unsupported assertion that this was a death penalty case. *503 Surely, in a capital case one might expect reasonably competent defense counsel to research the question of whether the seemingly non-violent act of solicitation qualified as a capital aggravating factor under a statute that required previous conviction of a crime involving the use or threat of violence.
¶ 11 A more serious error is the assumption that a reasonable lawyer might fear that solicitation could be connected with the crime being solicitedin this case, aggravated assaultso that the solicitation itself became a crime of violence. There is no authority supporting this proposition. Arizona authority, in fact, rejects it for two reasons. First, aggravated assault is not always a crime of violence because it may be committed recklessly or negligently and without either the intention of or knowledge about injuring anyone. See A.R.S. § 13-1204; State v. Fierro, 166 Ariz. 539, 549, 804 P.2d 72, 82 (1990). More important, the mere solicitation to commit an offense cannot be equated with the underlying offense. The solicitation statute criminalizes conduct that "encourages, requests or solicits another person to engage" in a felony or misdemeanor. See A.R.S. § 13-1002(A). The crime is completed by the solicitation and the "crime solicited need not be committed." W. LAFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 414, 420 (1972) (cited with approval in State v. Johnson, 131 Ariz. 299, 302 n. 1, 640 P.2d 861, 864 n. 1 (1982)). Thus, solicitation is a crime of communication, not violence, and the nature of the crime solicited does not transform the crime of solicitation into an aggravating circumstance.
¶ 12 Johnson makes this quite clear. Johnson solicited two undercover federal agents to use explosives to kill his enemy. He pleaded guilty to solicitation to commit murder. The enhancement statute for non-capital crimes requires the sentencing judge to consider as an aggravating factor the "threatened use ... of a deadly weapon or dangerous instrument during the commission of the crime." A.R.S. § 13-702(D)(2). Concluding that the solicitation conviction could therefore be aggravated if the crime solicited involved the proscribed conduct, the trial judge imposed an aggravated sentence. In a unanimous opinion by Justice Struckmeyer, this court reversed, holding that the crime of solicitation could not be aggravated by the nature of the crime being solicited. Johnson, 131 Ariz. at 303, 640 P.2d at 865. Even though the judge must consider the object of the solicitation to determine the classification of the offense in imposing the applicable sentence under § 13-1002(B), the nature of the crime solicited does not qualify as an aggravating circumstance. We based this conclusion on the fact that the "crime of solicitation requires no agreement or action by the person solicited, and thus the solicitation is complete when the solicitor, acting with the requisite intent, makes the command or request." Id. at 302 n. 1, 640 P.2d at 864 n. 1, quoting LAFAVE & SCOTT, supra, at 420.
¶ 13 Johnson was decided in 1982 and Gillies in 1983. Both cases were controlling law at the time of Ysea's plea negotiations. Thus, to use the dissent's verbiage, a reasonable lawyer who researched the issue in 1986 would have discovered that the statutory definition alone determined whether a crime was violent for purposes of aggravation. Further, the lawyer would have found that solicitation is a preparatory offense, complete upon the act of solicitation itself, and could not have been considered a crime of violence even if the act solicited would have qualified as such a crime.

B. Ineffective assistance of counsel
¶ 14 Ysea contends he was denied the right to effective assistance of counsel because he was incorrectly advised that the death penalty could have been imposed had he been convicted of first-degree murder. The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant in a state criminal trial the fundamental right to effective assistance of counsel. State v. Nash, 143 Ariz. 392, 396, 694 P.2d 222, 227, cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). This court does not require that defense counsel's advice be perfect, but it must be reasonably competent. State v. Watson, 134 Ariz. 1, 653 P.2d 351 (1982), overruled on other grounds *504 by State v. Lee, 142 Ariz. 210, 689 P.2d 153 (1984).
¶ 15 Under Arizona law, a finding of ineffective assistance of counsel requires that a defendant show: 1) trial counsel performed deficiently under prevailing professional norms; and 2) counsel's deficiency prejudiced the defendant. Nash, 143 Ariz. at 397, 694 P.2d at 227 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). A defendant who makes both of these showings is entitled to have his or her conviction reversed. Lee, 142 Ariz. at 214, 689 P.2d at 157.
¶ 16 Thus we address the question of whether Ysea's counsel performed deficiently under the circumstances. To avoid evaluating past conduct with the magnifying glass of hindsight, we evaluate counsel's performance in the context of the circumstances surrounding the offense and the prevailing professional norms in the legal community at the time Ysea entered his plea. See Nash, 143 Ariz. at 398, 694 P.2d at 228. As discussed above, with Johnson and Gillies on the books for more than two years at the time of the plea, it was not reasonable for defense counsel to conclude that Ysea's prior conviction satisfied § 13-702(F)(2). Ysea's counsel was deficient because he should have known or discovered the dispositive law on the issue.[1] Nor did counsel advise acceptance of the plea as a strategic matter, being unwilling "to bet his client's life" on an uncertain interpretation of the case law. See Dissent at ¶ 27. Counsel was unaware of the cases and thus did not and could not accurately advise his client.
¶ 17 The remaining question is whether counsel's deficient performance prejudiced Ysea. To show prejudice, "the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is sufficient to undermine confidence in the outcome." Nash, 143 Ariz. at 398, 694 P.2d at 228. To establish prejudice in the context of a plea agreement, a defendant must show a reasonable probability that except for his lawyer's error he would not have waived his right to trial and entered a plea. Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). A guilty plea can only be valid when the plea represents a voluntary and intelligent choice among alternatives available to the defendant. Id. at 57, 106 S.Ct. at 369. The defendant must thoroughly understand the plea's potential ramifications as well as the sentencing range and rights forfeited. Ariz. R.Crim.P. 17.1(b), 17.2, 17.4(a); State v. Watton, 164 Ariz. 323, 326, 793 P.2d 80, 83 (1990). A defendant who has detrimentally relied on erroneous legal advice has been prejudiced because the plea could not have been knowing and voluntary and thus has not made an informed choice. See United States v. Rumery, 698 F.2d 764, 765 (5th Cir.1983). Particularly when a defendant has pleaded guilty based on counsel's patently erroneous advice that he faces a more severe sentence than that actually possible, the plea was entered involuntarily. See Kennedy v. Maggio, 725 F.2d 269, 272 (5th Cir.1984) ("A plea of guilty that is based on the fear of a non-existent penalty can be neither knowing nor intelligent, and flaws the fundamental fairness of the entire proceeding"); Rumery, 698 F.2d at 765; Cooks v. United States, 461 F.2d 530, 531 (5th Cir.1972) (counsel who has induced defendant to plead guilty on patently erroneous advice that he will otherwise be subject to a much stricter sentence than the law would actually allow creates a "farce and mockery of justice").
¶ 18 The state asserts that had Ysea refused the plea and gone to trial, he would have been found guilty of first-degree murder and given the same sentence he is now *505 servingtwenty-five years to life. Thus, the state argues, the errors by Ysea's counsel did not prejudice the eventual outcome. This argument misses the point. The state is in no position to guarantee, nor are we to speculate, on the outcome of a trial that never took place. The issue is not whether counsel's errors prejudiced the outcome of a trial that was never held but whether counsel's errors prejudiced Ysea by inducing him to make an involuntary plea agreement and consequently give up his right to trial. Id.
¶ 19 The state argues that Ysea received a benefit from dismissal of the parole violation charge. Ysea counters that his lawyer's only reason for encouraging him to accept the plea offer was to eliminate his exposure to the death penalty; thus dismissal of the parole violation was immaterial to Ysea's decision to take the plea. Even assuming the two-year sentence would have been consecutive to the life sentence, the correct information Ysea receivedthat his sentence would be reduced by two years by taking the plea is certainly only minor and collateral compared to the critical and material yet incorrect information Ysea receivedthat he faced the possibility of the death penalty had he gone to trial. Any small benefit Ysea received pales in comparison to what he did not: the opportunity to decide whether to accept a plea agreement without thinking his life hung in the balance.
¶ 20 Moreover, both Ysea and his counsel assert through uncontested affidavits that fear of the potential death penalty was the sole motivator to accepting the plea offer. Ysea further contends that but for his counsel's admonitions, he would have gone to trial. On this record, Ysea clearly relied on advice that encouraged him to waive his right to trial in exchange for relief from a penalty that could not have been imposed. The dissent contends that the second prong of Strickland is absent in the present case because Ysea "would have pled to manslaughter no matter what the advice." Dissent at ¶ 29. But Ysea avers in his affidavit that his lawyer told him he had to take the plea to avoid the death penalty. It was only while this threat was pending that Ysea displayed any willingness to take the manslaughter plea. And it was in the context of that threat that Ysea told his attorney he would plead to no more than manslaughter. He never indicated he wanted that plea. In fact, even after he was aware that the state had offered a manslaughter plea with a stipulated maximum sentence, he insisted on going to trial because he believed he had nothing to lose. It is therefore mere speculation to conclude, as does the dissent, that Ysea would have taken the plea offer even if his lawyer had told him that the death penalty was not a possibility.
¶ 21 With the correct advice, Ysea might well have decided to go to trial, knowing that if he were convicted of first-degree murder the penalty would not be more serious than that specified in the plea offer. A reasonable person might well have chosen to take his chances on the result of a murder trial because he might be found not guilty, or guilty only of a lesser included offense. The real prejudice in this case is simply that Ysea gave up his right to trial by jury and took a plea offer because he was provided with seriously incorrect legal advice.
¶ 22 One final point. The dissent alludes to State v. McKinney, 185 Ariz. 567, 587, 917 P.2d 1214, 1234, cert. denied, ___ U.S. ____, 117 S.Ct. 310, 136 L.Ed.2d 226 (1996), as a case in which this court held that second degree murder "does not qualify as a crime of violence." Dissent at ¶ 25. While this was the result in McKinney, the dissent oversimplifies. The principle established in that case is quite simple: the (F)(2) factor crime of violenceis satisfied only when the prior crime involved an intentional or knowing act.[2] It is not satisfied by crimes committed negligently or recklessly. To adopt the dissent's views, expressed both today and in McKinney, would require us to overrule a large number of previously decided cases. See id. We decline to do so now for the reasons stated in McKinney. We understand that the dissent disagrees, but this *506 court clearly decided the issue in Gillies, Fierro, and McKinney. We continue to believe the principle is both intuitively and legally correctno matter what the label, to qualify a defendant for the death penalty the statutory definition of the prior crime must contain an element requiring either the intentional or knowing use or threat of violence.

CONCLUSION
¶ 23 Ysea received bad advice based on his lawyer's erroneous understanding of the law as it existed in 1986. Ysea was incorrectly advised that if he went to trial on the first-degree murder charge, he could face the death penalty. He was further ill-advised that to avoid the death penalty, he should plead guilty to manslaughter and accept the life sentence. Because such advice led Ysea to think his life was at stake, we cannot speculate that he did not rely on it. It must have been the primary if not sole basis for Ysea's decision to take the plea agreement. Because Ysea agreed to plead as a result of such erroneous advice, he could not have made a fully informed plea. Ysea's plea was therefore involuntary, and prejudice is established. See Hill, 474 U.S. at 59-60, 106 S.Ct. at 370-71. The trial court therefore abused its discretion in refusing to grant Ysea's Rule 32 motion claiming ineffective assistance of counsel. See Watton, 164 Ariz. at 325, 793 P.2d at 82.
¶ 24 The court of appeals' decision is vacated, as is the trial court's order of dismissal, and the case is remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court should allow Ysea to withdraw his plea of guilty to manslaughter. Pursuant to Rule 17.5, the charges as they existed before the plea agreement, including the charge of first-degree murder, should be reinstated.
ZLAKET, C.J., JONES, V.C.J., and MOELLER, J. (Retired).
MARTONE, Justice, dissenting.
¶ 25 This is a Rule 32 proceeding in which the only issue is the question of denial of effective assistance of counsel. The issue is not whether the offense of solicitation of aggravated assault in fact complied with A.R.S. § 13-703(F)(2), but whether a lawyer in 1986 could be sure that it did not. Our cases in developing the (F)(2) factor have been anything but intuitive. See State v. McKinney, 185 Ariz. 567, 587, 917 P.2d 1214, 1234 (1996) (Martone, J., dissenting from the court's holding that the defendant's "second degree murder conviction cannot be an aggravating circumstance for purposes of former § 13-703(F)(2)," id. at 583, 917 P.2d at 1230, because "it does not qualify as a crime of violence." Id. at 582, 917 P.2d at 1229).[1] It is true that, contrary to the decision of the court of appeals, we narrowed (F)(2) to the statutory definition of the crime in 1983, and not in 1989, but that is where the analysis should begin, not end. A reasonable lawyer in 1986 would have looked at the offense of solicitation and seen that it was an intentional offense. He could have further connected that up with the underlying offense of aggravated assault and concluded that it was very probable that it was a crime of violence. The court focuses only on subsection (A) of A.R.S. § 13-1002, defining solicitation. But subsection (B) classifies the offense of solicitation based upon the offense solicited. The offense solicited here is aggravated assault, A.R.S. § 13-1204. It sure reads like a crime of violence. Culpable mental state would not be at issue because solicitation itself under § 13-1002 is a specific intent crime. I suspect this is what led three members of the court of appeals to conclude that they did not believe it was "entirely clear at the time petitioner entered his guilty plea nor is it clear at this time whether the prior conviction in this case can be an aggravating circumstance." *507 State v. Ysea, No. 2CA-CR96-0109-PR, Mem. Dec. at 3 (Jan. 9, 1997) (emphasis added).
¶ 26 In State v. Johnson, 131 Ariz. 299, 640 P.2d 861 (1982) we held that because the offense solicited was not committed "during the commission of the crime" of solicitation, as required by A.R.S. 13-702(D)(2), the dangerous nature of the offense solicited could not be used as an aggravator.
¶ 27 But here, the issue is very different: whether a reasonable lawyer could have concluded that a prior conviction for solicitation of aggravated assault might constitute a "felony in the United States involving the use or threat of violence on another person," within the meaning of A.R.S. § 13-703(F)(2). While Johnson holds, quite reasonably, that sentencing for the crime of solicitation may not be aggravated if the solicitor, during the commission of the crime of solicitation, did not use, threaten to use, or possess a deadly weapon or dangerous instrument, it does not follow that solicitation of aggravated assault is not a felony involving the use or threat of violence on another person under A.R.S. § 13-703(F)(2). I am not convinced that the answer to this question is so clear that a reasonable lawyer should have been willing to bet his client's life on it.
¶ 28 Combine this with the fact that this lawyer's client had admitted, and was willing to admit, facts that would constitute the offense of manslaughter. In light of the lack of certainty surrounding the (F)(2) factor, I do not see how counsel was deficient within the meaning of the first Strickland prong in suggesting to his client that taking the plea would put to rest the question of the death penalty once and for all.
¶ 29 The second Strickland prong is the question of prejudice. Even if one could conclude that there was deficient performance, there must be prejudice. Paragraph eight of Ysea's affidavit stated that he did not want to sign a plea agreement "except for a plea to what I had done, which I believe to be manslaughter." The question then is not, as the court suggests, whether he would have been convicted at trial, but whether he would have pled to manslaughter had the advice been different. The answer on this record is that he would have pled to manslaughter no matter what the advice. I thus see no prejudice.
¶ 30 I therefore respectfully dissent.
NOTES
[1] The state argues that the fact Ysea was offered the plea and life sentence shows that the Cochise County legal community believed Ysea's prior conviction met the (F)(2) standard. However, the plea strikes this court as less representative of the reasonable beliefs of the Cochise County legal community and more akin to prosecutorial bargaining to facilitate a guilty plea. Prosecutorial encouragement of defense counsel's understanding of the extent of available punishment is irrelevant to the question of adequacy of defense counsel's performance. United States v. Rumery, 698 F.2d 764, 765 (5th Cir.1983). It is defense counsel, not the prosecutor, who must provide adequate legal representation when formulating the defendant's legal strategy.
[2] See McKinney, in which four members of this court believed that the dissent mischaracterized the holding. Id. at 583, 917 P.2d at 1230.
[1] Here is what the court said:

Because Hedlund's prior conviction was for a crime that, on the face of the statute, might have been committed recklessly, it does not qualify as a crime of violence. In A.R.S. § 13-703(D)(2), the legislature used the term "violence," not the phrase "conviction for a crime which resulted in or threatened physical injury." Accordingly, Hedlund's second degree murder conviction cannot be an aggravating circumstance for purposes of former § 13-703(F)(2).
State v. McKinney, 185 Ariz. 567, 582-83, 917 P.2d 1214, 1229-30 (1996) (footnote omitted).