966 P.2d 1023

**STATE of Arizona, Respondent,**

v.

**David Stewart BOWERS, Petitioner.**

**No. 1 CA–CR 96–0938–PR.**

Court of Appeals of Arizona,
Division 1, Department E.

May 19, 1998.

Review Denied Nov. 17, 1998.

Richard M. Romley, Maricopa County, by Linda Alauria, Deputy County Attorney, Phoenix, for Respondent.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for Petitioner.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 The Petitioner, David Stewart Bowers, seeks review of the trial court's summary dismissal of his petition for post-conviction relief under Rule 32, Arizona Rules of Criminal Procedure. We grant review of his petition and grant relief and remand to the trial court for an evidentiary hearing.

## FACTS AND PROCEDURE

¶ 2 In August 1993, the Petitioner was indicted in Maricopa County cause number CR–93–92224 for two counts of armed robbery. At the time of the offenses, the Petitioner was on intensive probation in Maricopa County for four felony offenses.[1] The Petitioner was also charged with first-degree burglary and kidnapping in Maricopa County cause number CR–93–92329B and with first-

---

1. The offenses were aggravated assault and first-degree burglary, both class 3 felonies, in Maricopa County cause number CR 92–92163A; second-degree burglary, a class 3 felony, in Maricopa County cause number CR 92–92412; and misconduct involving weapons, a class 4 felony, in Maricopa County cause number CR 92–92258.

degree burglary in Maricopa County cause number CR–94–90654. Before the Maricopa County charges were resolved, the Petitioner was tried in Gila County and convicted of four felony and three misdemeanor offenses.[2] He was sentenced to a total of twenty-eight years imprisonment for the Gila County offenses.

¶ 3  In February 1995, the Petitioner entered a plea agreement in Maricopa County cause number CR 93–92224 to both armed robbery charges, enhanced by a single prior felony conviction. The plea agreement stipulated that the Petitioner would serve consecutive fifteen-year sentences on the two charges. The parties agreed to sentence enhancement under Ariz.Rev.Stat. Ann. ("A.R.S.") section 13–604.02(B) (Supp.1989), which required that a sentence for an offense committed while on parole be served without possibility of early release.[3] At the change of plea hearing, counsel apparently represented that the Petitioner committed the offenses while using a gun.

¶ 4  At sentencing, the judge reminded the parties that A.R.S. section 13–604.02 required sentences to be served consecutively to sentences for the offenses for which the Petitioner was on probation. In addition, the deputy county attorney present in court (who was not the deputy who had negotiated the plea agreement), stated that, because the offenses were committed with a weapon, enhancement was governed by section 13–604.02(A), which specified a sentence of life imprisonment without possibility of release for twenty-five calendar years. Because the parties had neither contemplated the requirement that the sentences be consecutive to those imposed in the probation matters, nor the purported requirement of life sentences, the Petitioner's sentencing was continued.

¶ 5  In May 1995, the parties resubmitted the original plea agreement with several amendments. The stipulated sentence for each offense was reduced to fourteen years. Further, the plea agreement recited that the offenses were committed "with a simulated weapon."

¶ 6  The judge accepted the plea agreement and sentenced the Petitioner according to its stipulations to terms of fourteen years imprisonment consecutive to each other and to the offenses for which he was on probation. The judge revoked probation and imposed three presumptive sentences of five years and one presumptive term of four years imprisonment, to be served concurrently with each other. The judge further ordered that all the Maricopa County sentences were to be served concurrently with the sentences which had been imposed in Gila County. Pursuant to the plea agreement, Maricopa County cause numbers CR 93–92329B and CR 94–90654 were dismissed, and the State agreed not to file charges reflected in nine other police reports, although the Petitioner agreed to pay restitution in the dismissed and unfiled matters.

¶ 7  The Petitioner commenced this Rule 32 proceeding in July 1995, alleging that his trial counsel was ineffective because he gave incorrect legal advice about the consequences the Petitioner faced if he rejected the plea agreement and went to trial. The Petitioner's trial counsel submitted an affidavit in support of the petition in which he acknowledged that he had told the Petitioner that, if convicted after trial on the two armed robbery charges under A.R.S. section 13–604.02(A), he would face mandatory consecutive sentences of life imprisonment and that he would only be eligible for parole on each sentence after twenty-five years. Counsel also stated that he informed the Petitioner that those life sentences would have to be served consecutively to the sentences previously imposed on his Gila County convictions. Finally, counsel stated that he failed to inform the Petitioner that if he was convicted of armed robbery with a simulated weapon—

---

2.  The offenses were aggravated assault, a class 3 dangerous felony; armed robbery, a class 2 dangerous felony; unlawful flight from a law enforcement vehicle, a class 5 felony; and unlawful use of a means of transportation, a class 6 felony. The State withdrew an allegation that the of-fenses occurred while petitioner was on probation.

3.  References are to versions of statutes in effect on July 19, 1993, the date of the offenses in Maricopa County cause number CR 93–92224.

i.e., a nondangerous offense—his sentences under A.R.S. section 13–604.02(B) could be as low as 15.75 years.

¶ 8 At the time of the Petitioner's offenses, as now, A.R.S. section 13–604.02 required that sentences for crimes committed while on probation be served consecutively to the sentences imposed on the offenses for which the defendant was on probation. However, the statute did not impose a requirement that the sentences for offenses committed while on probation be served consecutively to each other.

¶ 9 After the State submitted a response, the judge summarily dismissed the petition for post-conviction relief "for the reasons stated in the response." The Petitioner filed a timely petition for review, asserting that the trial judge abused his discretion in dismissing his claims of ineffective assistance of counsel without an evidentiary hearing.

## THE PETITIONER PRESENTS A COLORABLE CLAIM

¶ 10 A trial court may summarily dismiss a Rule 32 petition only if it finds no "material issue of fact or law exists which would entitle the defendant to relief." Ariz. R.Crim. P. 32.6(c). In order to receive an evidentiary hearing, the Petitioner must present a "colorable claim"—one which, if true, would have changed the outcome of the proceeding. *State v. Watton*, 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990). A decision as to whether a petition presents a colorable claim is, to some extent, a discretionary decision for the trial court. *State v. D'Ambrosio*, 156 Ariz. 71, 73, 750 P.2d 14, 16 (1988). "The trial court must be mindful, however, that when doubt exists, 'a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review.'" *Id.* (quoting *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986)). An appellate court will reverse a trial court's summary dismissal only if an abuse of discretion affirmatively appears. *Watton*, 164 Ariz. at 325, 793 P.2d at 82.

¶ 11 The Petitioner raises claims of ineffective assistance of counsel which induced his guilty plea. In deciding whether counsel was ineffective and whether such ineffectiveness warrants withdrawal of the plea, a court applies a two-part test asking: (1) was counsel's performance reasonable under all the circumstances, i.e., was it deficient?; and (2) was there a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different, i.e., was it prejudicial? *State v. Anderson*, 147 Ariz. 346, 351, 710 P.2d 456, 461 (1985).

¶ 12 The affidavits by the Petitioner and counsel regarding counsel's erroneous legal advice set forth a colorable claim of deficient performance. The State's response to the petition focused entirely upon the element of prejudice. We perceive two principal arguments therein: First, that the Petitioner failed to adequately allege a reasonable probability of a more favorable result had he gone to trial on the charged offenses. Second, that the Petitioner failed to adequately allege that counsel's purported misadvice was material to his decision to plead guilty. Because the trial judge's decision rested upon the State's arguments, we examine them separately.

¶ 13 In *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applied to challenges to guilty pleas induced through ineffective assistance of counsel. In this context, the Court held, the element of prejudice

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, *in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.*

*Id.* (emphasis added).

¶ 14 In its response to the Rule 32 petition in the trial court, the State made no reference to *Hill*. Rather, the State asserted:

The prejudice component of the *Strickland* test focuses on the question whether defense counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). The State argued that the Petitioner could not "show that the result would have been any different but for [counsel's] advice.... If [counsel] had advised petitioner not to enter into the plea agreement and [had] taken the case to trial, [the Petitioner] would have lost." Further, the State argued, the Petitioner was unable to demonstrate that, if he were convicted following a trial, his sentences would have been more favorable than those secured by the plea agreement.

¶ 15 The Petitioner made no claim in his Rule 32 pleadings regarding the likelihood of a more favorable result at trial or at sentencing after a trial. Whether such outcomes must be pleaded and proven requires us to determine if the definition of "prejudice" in *Hill* has, as the State contends, been superseded or modified by *Lockhart v. Fretwell.*

¶ 16 *Fretwell* involved a capital sentencing proceeding following the defendant's state court conviction for felony murder. At that proceeding, the jury was instructed without objection that it could consider as an aggravating factor whether the murder was committed for pecuniary gain. The jury found that factor and Fretwell was sentenced to death. However, the Eighth Circuit Court of Appeals had previously held that factor invalid in *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.1985). Fretwell's attempt on direct appeal to assert the invalidity of the aggravating factor was unsuccessful because of counsel's failure to object in the trial court. In collateral proceedings, Fretwell raised the *Collins* argument in the context of a claim of ineffective assistance of counsel. He obtained federal habeas corpus relief on that ground, notwithstanding that, while collateral proceedings were pending, the Eighth Circuit overruled *Collins* in light of a subsequent Supreme Court opinion. The Eighth Circuit held that since Fretwell was entitled to the benefit of *Collins* at the time of the original sentencing proceeding, resentencing him under current law would only "perpetuate the prejudice" caused by his counsel's deficient performance. *Fretwell v. Lockhart*, 946 F.2d 571, 578 (8th Cir.1991).

¶ 17 The Supreme Court reversed. The Court stated that

an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Fretwell*, 506 U.S. at 369–70, 113 S.Ct. 838 (footnote omitted). Since the objection which counsel neglected to raise was premised on a case which was subsequently overruled, the Court held, Fretwell had been deprived only of the opportunity to have the state court make an error in his favor. *Id.* at 370, 113 S.Ct. 838. This was not cognizable prejudice under *Strickland.*

¶ 18 Several courts have since applied *Fretwell* in the context of challenges to guilty pleas. *See Mangum v. Hargett*, 67 F.3d 80, 84–85 (5th Cir.1995); *Jones v. Page*, 76 F.3d 831, 841 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 363, 136 L.Ed.2d 254 (1996); *State v. Van Cleave*, 674 N.E.2d 1293 (Ind. 1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998); *Hopfinger v. Leapley*, 511 N.W.2d 845 (S.D.1994). *Van Cleave* presents the most comprehensive analysis of the issue. The Indiana Supreme Court reasoned that because *Fretwell* rejected an analysis of prejudice based on "outcome determination," it was error, in the context of a guilty plea, to focus solely on whether or not the defendant would have entered the plea. Rather, the Indiana court held, "to show prejudice after a guilty plea—i.e., to establish that a conviction was unfair or unreliable—the defendant must establish a reasonable probability that the trial would not have resulted in that conviction." 674 N.E.2d at 1299–1300.

¶ 19 We reject an understanding of prejudice in the context of a guilty plea which would require a petitioner to demonstrate a more favorable outcome after trial in order to establish a claim of ineffective assistance of counsel. Rather, we hold that the prejudice requirement remains as stated in *Hill,* and is satisfied when a petitioner demonstrates "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 58, 106 S.Ct. 366. *Fretwell,* which arose in a vastly different context, does not suggest a drastic modification of the *Hill* standard. *Fretwell* made no mention of *Hill* at all, but confined its analysis to prejudice in the context of adversary proceedings.[4] That analysis does not easily transfer to guilty pleas, where the claim of ineffective assistance of counsel is directed toward the "outcome of the plea process," rather than to the outcome of a trial or of sentencing after trial. *Hill,* 474 U.S. at 59, 106 S.Ct. 366.

¶ 20 Requiring a petitioner who challenges his guilty plea on the ground of ineffective assistance of counsel to demonstrate a reasonable likelihood of acquittal would create an insurmountable burden of proof for many such claims, even if petitioner could demonstrate the plea was involuntary. Raising the standard of prejudice so high would, we believe, effectively insulate deficient performance by defense counsel in such cases from meaningful judicial review within the context of the criminal prosecution. A petitioner's signature on a plea agreement would often be wholly conclusive of an ineffective assistance of counsel claim, even if that signature were induced by attorney error or outright misrepresentation. This could undermine criminal justice by casting doubt about the reliability of convictions based on guilty pleas. The practice of plea bargaining could be chilled as defendants learned the extent that counsel's performance was shielded from constitutional challenge. Requiring a petitioner to plead and prove only that he would have gone to trial but for counsel's ineffective assistance helps ensure that the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill,* 474 U.S. at 56, 106 S.Ct. 366 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

¶ 21 Our conclusion is bolstered by the very recent decision of our supreme court, *State v. Ysea,* 191 Ariz. 372, 956 P.2d 499 (1998), in which the court, relying on *Hill,* set aside a plea of guilty based on misadvice of counsel because the petitioner had shown a reasonable probability that except for his lawyer's error he would not have waived his right to trial. While the court did not discuss *Fretwell,* the decision is a clear indication that our supreme court believes the *Hill* standard is appropriate.

¶ 22 The State's response in the trial court implicated another aspect of *Hill:* the nature of the allegation of prejudice which a petitioner must make to state a claim of ineffective assistance of counsel inducing his plea of guilty. In *Hill,* the Supreme Court found that no evidentiary hearing was necessary since

> [p]etitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular

---

4. We are cautious about deriving from *Fretwell* a new standard for evaluating the prejudice inquiry set forth in *Strickland. See In re Avena,* 12 Cal.4th 694, 49 Cal.Rptr.2d 413, 909 P.2d 1017, 1045 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 700, 136 L.Ed.2d 622 (1997) (Arabian, J., concurring) ("Before suggesting a transmutation or contemplating a departure [from *Strickland* ], we should await a more definitive and explicit pronouncement from the high court as final arbiter"). Indeed, Justice O'Connor, author of *Strickland,* wrote in *Fretwell* that

The determinative question—whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," ...— remains unchanged. This case, however, concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry.

506 U.S. at 374, 113 S.Ct. 838 (O'Connor, J., concurring).

...

emphasis on his parole eligibility in deciding whether or not to plead guilty.

474 U.S. at 60, 106 S.Ct. 366.

¶ 23 While this passage sets forth the minimum a petitioner must allege to state a claim for relief, courts have since attempted to determine what additional matters, if any, must be stated. *See United States v. Horne,* 987 F.2d 833, 835–36 (D.C.Cir.1993) ("[I]t is by no means obvious how a court is to determine the probability that a defendant would have gone to trial. It is clear enough that a defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial,' ... but it is not clear how much more is required of him"). Some courts have found a mere allegation that a defendant would have gone to trial is sufficient, *see Ostrander v. Green,* 46 F.3d 347, 353 (4th Cir.1995), *overruled in part on other grounds by O'Dell v. Netherland,* 95 F.3d 1214, 1222 (4th Cir.1996); *United States v. Giardino,* 797 F.2d 30, 32 (1st Cir.1986), but most have required a more complete statement. *See United States v. LaBonte,* 70 F.3d 1396, 1413 (1st Cir.1995), *reversed on other grounds,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997); *Key v. United States,* 806 F.2d 133, 139 (7th Cir.1986); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990); *United States v. Gordon,* 4 F.3d 1567, 1571 (10th Cir.1993); *State v. Bentley,* 201 Wis.2d 303, 548 N.W.2d 50, 55 (1996).

¶ 24 In *Bentley,* the Wisconsin Supreme Court noted *Hill's* observation that the defendant failed to allege "special circumstances" to explain why he placed particular emphasis on his counsel's misadvice. *Id.; see also Doganiere,* 914 F.2d at 168 (noting absence of allegation of "special circumstances" in habeas petition). The *Bentley* court held:

The nature and specificity of the required supporting facts will necessarily differ from case to case. However, a defendant should provide facts that allow the reviewing court to meaningfully assess his or her claim.

548 N.W.2d at 55.

■ ¶ 25 We believe *Bentley* sets forth an appropriate standard for evaluating the adequacy of allegations of prejudice in the context of a guilty plea. We therefore hold that, to state a colorable claim, the allegation that a petitioner would not have pleaded guilty but for counsel's deficient performance must be accompanied by an allegation of specific facts which would allow a court to meaningfully assess why that deficiency was material to the plea decision. Such a requirement is consistent with prior cases holding that petitioner must demonstrate the materiality of misrepresentation or nondisclosure in the plea process to his decision to plead. *See State v. Crowder,* 155 Ariz. 477, 482, 747 P.2d 1176, 1181 (1987) (defendant must show that restitution amount was actually relevant to decision to plead in potential capital case); *State v. Sasak,* 178 Ariz. 182, 186, 871 P.2d 729, 733 (App.1993) (defendant failed to show that prosecutor's promise not to recommend consecutive sentences was material to plea decision). It is consistent as well with the notion that a Rule 32 hearing is not required on a claim of ineffective assistance of counsel when the petition offers only mere generalizations and unsubstantiated claims. *State v. Borbon,* 146 Ariz. 392, 399, 706 P.2d 718, 725 (1985).

¶ 26 We do not believe that our supreme court indicated any different rule in *Ysea,* even though it held in that case that prejudice had been conclusively established. In *Ysea* it was very clear that the defendant pled guilty because he erroneously thought that if he did not, he would be exposed to the death penalty. Any benefit the defendant received from his plea, the supreme court said, "paled" in comparison to what he did not receive—the opportunity to decide whether to accept the plea without thinking that his life hung in the balance.

■ ¶ 27 Under the *Hill* standard, the Petitioner has stated a colorable claim with regard to two allegations of misadvice by his trial counsel. The Petitioner claimed that he was misled by counsel's erroneous advice that convictions on the armed robbery charges would effectively result in a minimum term of fifty years imprisonment because the sentences had to be served consecutively to each other. The Petitioner alleged

that he entered the plea agreement because he accepted counsel's advice that it provided his "only chance to be released from prison during my life time on these charges." These allegations set forth a paradigm claim of ineffective assistance of counsel which may have undermined the voluntariness of the plea. In *State v. Sutton*, 143 Ariz. 234, 237, 693 P.2d 377, 380 (App.1984), this court held that defense counsel's representation that a maximum sentence was thirty-five years, when the maximum sentence was in fact twenty years, presented a colorable claim that the misadvice coerced the guilty plea. *See also Hammond v. United States*, 528 F.2d 15, 18 (4th Cir.1975) (misrepresentation of maximum sentence as ninety years, when it was only fifty-five years, supported claim of ineffective assistance of counsel to defendant who accepted plea agreement reducing his maximum sentence to twenty-five years); *Ward v. State*, 433 So.2d 1221, 1223 (Fla.Dist. Ct.App.1983) (plea rendered involuntary when counsel erroneously informed defendant that maximum penalty was death).

¶ 28 The same analysis applies to the Petitioner's claim that counsel misled him by informing him that convictions after a trial would result in sentences that would have to be served consecutively to his Gila County convictions. Combined with the alleged misadvice regarding the consecutive nature of the sentences, this alleged misadvice confronted the Petitioner with a threat of sentences totalling more than seventy-eight years. The State suggests that this claim was not colorable, since the plea agreement contained no provision regarding the Gila County sentences. We do not believe this fatally undermines the Petitioner's claim. In entering his agreement, the Petitioner may have found the risk of sentences consecutive to his Gila County sentences accept-

able, yet still have been misled by counsel's alleged erroneous advice that consecutive sentences would be mandatory if he were convicted after trial. However, the degree of risk that the Petitioner ultimately found acceptable may well be relevant to the judge in determining the extent that the alleged misadvice actually was material to the plea decision.

¶ 29 We find no colorable claim with regard to the Petitioner's allegation that counsel failed to advise him that conviction of armed robbery with a simulated weapon, a non-dangerous offense, would have exposed him to a maximum prison sentence of 15.75 years on each offense. The Petitioner's affidavit contained no assertion that his plea decision would have changed in reliance upon possible conviction of nondangerous offenses. The available record strongly suggests that the use of a "simulated weapon" was nothing more than an artifice to support the Petitioner's conviction of nondangerous offenses while on probation.[5] The Petitioner presented no facts to support an assertion at trial that the offenses involved a simulated weapon.

¶ 30 We emphasize that the Petitioner has merely stated colorable claims. At an evidentiary hearing, he will bear the burden of proving his assertions of deficient performance by counsel and the resultant prejudice to his decision to plead guilty. In determining the truth of the Petitioner's assertions, the court may weigh factors noted by the State in its response to the petition, such as his likelihood of success at trial and the fact that the plea agreement limited the Petitioner's exposure regarding offenses that were to be dismissed or not filed. The court may conclude that the Petitioner entered his plea in order to reduce his sentence exposure in the face of strong evidence against him, rath-

---

5. It is not clear why counsel for the parties used this stratagem. Apparently, the goal was to achieve "flat" sentences under former A.R.S. § 13-604.02(B), which applies to nondangerous offenses committed while on probation. However, since it was within the State's discretion to allege applicable enhancements, the plea agreement could have treated the armed robbery charges as nondangerous offenses, despite the apparent historical fact that they involved the use of a deadly weapon. *Cf. State v. Paredes*, 181

Ariz. 47, 51, 887 P.2d 577, 581 (App.1994) (imposition of life sentence proper when state filed allegations of dangerous nature of the offense and enhancement under A.R.S. § 13-604.02(A)). Taking inconsistent factual positions at separate plea proceedings may undermine the reliability of convictions based on pleas, engender unnecessary subsequent litigation, and needlessly call the maligned process of plea bargaining into disrepute.

er than because of counsel's alleged misadvice regarding the nature of mandatory sentences under A.R.S. section 13–604.02. In *Crowder*, our supreme court directed a trial court to assess with a "very critical eye" a claim that a plea was involuntary due to ignorance of a restitution obligation. 155 Ariz. at 482, 747 P.2d at 1181. The court noted:

> Plea bargains should be honored by both parties, and withdrawal will be allowed only when it may fairly be said that the deal was not voluntary because defendant lacked information of true importance to the decision-making process.

*Id.*

¶ 31 We grant review of the petition for review and grant relief by remanding the matter to the trial court for an evidentiary hearing consistent with this opinion.

SULT, P.J., and GARBARINO, J., concur.