173 P.3d 1191 (2007)
Luis HIDALGO III and Anabel Espindola, Petitioners,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, In and for the COUNTY OF CLARK, and the Honorable Donald M. Mosley, District Judge, Respondents, and
The State of Nevada, Real Party in Interest.
No. 48233.
Supreme Court of Nevada.
December 27, 2007.
*1192 Gentile DePalma, Ltd., Dominic P. Gentile, Las Vegas, for Petitioner Hidalgo.
JoNell Thomas, Las Vegas, for Petitioner Espindola.
Catherine Cortez Masto, Attorney General, Carson City; David J. Roger, District Attorney, James Tufteland, Chief Deputy District Attorney, and Giancarlo Pesci and Marc P. DiGiacomo, Deputy District Attorneys, Clark County, for Real Party in Interest.
BEFORE THE COURT EN BANC.

OPINION
PER CURIAM:
In this opinion, we consider whether solicitation to commit murder is a felony involving the use or threat of violence to the person of another within the meaning of the death penalty aggravator defined in NRS 200.033(2)(b). We conclude it is not. We also consider whether the State's notices of intent to seek the death penalty against petitioners satisfy the requirements of SCR 250(4)(c). We conclude they do not. Accordingly, we grant the petition and direct the district court to strike the notices of intent to seek the death penalty.[1]

*1193 FACTS

Petitioners Luis Hidalgo III and Anabel Espindola are awaiting trial on one count of conspiracy to murder Timothy Hadland, one count of first-degree murder for Hadland's death (under alternative theories of principal, aiding or abetting, and co-conspirator liability), and two counts of solicitation to commit the murders of two alleged witnesses to Hadland's death. The State filed substantively identical notices of intent to seek the death penalty alleging three aggravating circumstances against each petitioner. The first and second aggravators are based on NRS 200.033(2)(b) and allege the two solicitation counts, assuming petitioners are found guilty of them, as prior felonies involving the use or threat of violence to another person.[2] The third aggravator alleges that Hadland's murder was committed by a person, for himself or another, to receive money or any other thing of monetary value pursuant to NRS 200.033(6).
On December 12, 2005, petitioners moved the district court to strike the State's notices of intent. The district court heard argument on the motion in March and September of 2006 and denied the motion from the bench on September 8, 2006. This original petition challenging the district court's ruling followed.

DISCUSSION
"This court may issue a writ of mandamus to compel the performance of an act which the law requires as a duty resulting from an office or where discretion has been manifestly abused or exercised arbitrarily or capriciously."[3] The writ will issue where the petitioner has no "plain, speedy and adequate remedy in the ordinary course of law."[4] The decision to entertain a mandamus petition lies within the discretion of this court, and this court considers whether "judicial economy and sound judicial administration militate for or against issuing the writ."[5] "Additionally, this court may exercise its discretion to grant mandamus relief where an important issue of law requires clarification."[6] The instant petition presents such issues. Further, considerations of judicial economy militate in favor of exercising our discretion to intervene by way of extraordinary writ at this time. Therefore, we have addressed the merits of the petition in this opinion.
Aggravators one and two: solicitation to commit murder as a prior felony involving the use or threat of violence under NRS 200.033(2)(b)
Petitioners argue that solicitation to commit murder cannot serve as a prior-violent-felony aggravating circumstance because it is not "[a] felony involving the use or threat of violence to the person of another" within the meaning of NRS 200.033(2)(b). We agree.
The crime of solicitation to commit murder is defined in NRS 199.500(2), which provides that "[a] person who counsels, hires, commands or otherwise solicits another to commit murder, if no criminal act is committed as a result of the solicitation, is guilty" of a felony. The elements of solicitation do not involve the use of violence to another, regardless of the crime solicited. The remaining question is whether solicitation of a violent crime can be considered an offense involving the threat of violence to the person of another. We conclude it cannot.
As this court observed in Sheriff v. Schwarz, "[u]nlike other criminal offenses, in the crime of solicitation, `the harm is the asking  nothing more need be proven.'"[7] *1194 Solicitation is criminalized, of course, because it carries the risk or possibility that it could lead to a consummated crime. But as this court stated in Redeker v. District Court, a risk or potential of harm to others "does not constitute a `threat' under NRS 200.033(2)(b)."[8]
Other jurisdictions have concluded that solicitation to commit murder cannot support an aggravator based on a prior felony involving the use or threat of violence to another person. For instance, in Elam v. State, the Supreme Court of Florida held that solicitation to commit murder could not support an aggravator based on a prior felony involving the use or threat of violence to the person, concluding that "[a]ccording to its statutory definition, violence is not an inherent element" of solicitation.[9] Citing Elam and other precedent, a Florida appellate court reached a similar conclusion in Lopez v. State that the crime of solicitation does not itself involve a threat of violence:
"The gist of criminal solicitation is enticement" of another to commit a crime. No agreement is needed, and criminal solicitation is committed even though the person solicited would never have acquiesced to the scheme set forth by the defendant. Thus, the general nature of the crime of solicitation lends support to the conclusion that solicitation, by itself, does not involve the threat of violence even if the crime solicited is a violent crime.[10]
The Supreme Court of Arizona addressed this issue in State v. Ysea.[11] The Ysea court considered whether solicitation to commit aggravated assault could support the aggravating factor of a prior felony involving "`the use or threat of violence on another person.'"[12] The court concluded that it could not because the statutory definition of solicitation did not require an act or a threat of violence as an element of the crime.[13]
The decisions in Elam, Lopez, and Ysea are not precisely on point because those courts relied on the statutory elements of the crime of solicitation, whereas we have held that the sentencer can look beyond the statutory elements to the charging documents and jury instructions to determine whether a prior felony conviction, after trial, involved the use or threat of violence.[14] However, the court in Elam dealt with a Florida statute that particularized solicitation to commit a capital felony.[15] And the courts in both Lopez and Ysea expressly concluded that regardless of the violent nature of the crime solicited, solicitation itself is not a crime involving a threat of violence.
Obviously, the nature of the crime petitioners allegedly solicited is itself violent. But this does not transform soliciting murder into threatening murder within our view of the meaning of the statute. As the Ysea court put it, "the mere solicitation to commit an offense cannot be equated with the underlying offense. . . . [S]olicitation is a crime of communication, not violence, and the nature of the crime solicited does not transform the crime of solicitation into an aggravating circumstance."[16]
The State claims that California and Oklahoma both allow solicitation to commit murder to support a prior-violent-felony aggravator. However, the cases the State cites are not helpful to the State's position. The defendant in the Oklahoma case stipulated that his two prior convictions involved the use or threat of violence, and the case contains no useful analysis of this issue.[17] In the California case, while the defendant was in jail *1195 awaiting trial on a charge of killing his wife by lying in wait, he solicited a friend to murder a witness by lying in wait. Evidence of the solicitation was admitted not to establish any prior violent felony, but as proof of the defendant's consciousness of guilt and that he killed his wife while lying in wait.[18]
We conclude that the threat provision of NRS 200.033(2)(b) was meant to apply in cases like Weber v. State,[19] which the State cites for the proposition that force need not be an element of the crime underlying the prior-violent-felony aggravator. In Weber, we upheld two prior-violent-felony aggravators based on sexual assaults of a minor girl.[20] We noted that the elements of sexual assault do not include the use or threat of violence, and we concluded there was "no evidence of overt violence or overt threats of violence by Weber" against the victim during the two assaults.[21] But we also concluded that the evidence showed "at least implicit" threats of violence that were perceived by the minor girl herself and enabled the sexual assaults to occur.[22] We therefore concluded that the sexual assaults could properly support the aggravator.[23] In this case, there are no allegations that petitioners made threats of violence, implicit or explicit, that were perceived as such by the intended victims.
We conclude that solicitation to commit murder, although it solicits a violent act, is not itself a felony involving the use or threat of violence within the meaning of NRS 200.033(2)(b). We therefore conclude that the first two aggravators must be stricken.
Aggravator three: murder to receive money or any other thing of monetary value under NRS 200.033(6)
Petitioners also argue that the State's notices of intent to seek the death penalty violate SCR 250 in alleging the third aggravating circumstance pursuant to NRS 200.033(6), that "[t]he murder was committed by a person, for himself or another, to receive money or any other thing of monetary value." SCR 250(4)(c) provides that the notice of intent to seek death "must allege all aggravating circumstances which the state intends to prove and allege with specificity the facts on which the state will rely to prove each aggravating circumstance." Furthermore, "a defendant cannot be forced to gather facts and deduce the State's theory for an aggravating circumstance from sources outside the notice of intent to seek death. Under SCR 250, the specific supporting facts are to be stated directly in the notice itself."[24]
The State's notices allege in pertinent part:
The murder was committed by a person, for himself or another, to receive money or any other thing of monetary value, to-wit by: by [Espindola] (a manager of the Palomino Club) and/or [Hidalgo] (a manager of the Palomino Club) and/or Luis Hidalgo, Jr. (the owner of the Palomino Club) procuring Deangelo Carroll (an employee of the Palomino Club) to beat and/or kill Timothy Jay Hadland; and/or Luis Hidalgo, Jr. indicating that he would pay to have a person either beaten or killed; and/or by Luis Hidalgo, Jr. procuring the injury or death of Timothy Jay Hadland to further the business of the Palomino Club; and/or [Hidalgo] telling Deangelo Carroll to come to work with bats and garbage bags; thereafter, Deangelo Carroll procuring Kenneth Counts and/or Jayson Taoipu to kill Timothy Hadland; thereafter, by Kenneth Counts shooting Timothy Jay Hadland; thereafter, [Hidalgo] and/or [Espindola] providing six thousand dollars ($6,000) to Deangelo Carroll to pay Kenneth Counts, thereafter, Kenneth Counts receiving said money; and/or by [Espindola] providing two hundred dollars ($200) to Deangelo Carroll and/or by [Espindola] and/or [Hidalgo] providing fourteen hundred dollars ($1400) and/or eight hundred *1196 dollars ($800) to Deangelo Carroll and/or by [Espindola] agreeing to continue paying Deangelo Carroll twenty-four (24) hours of work a week from the Palomino Club even though Deangelo Carroll had terminated his position with the club and/or by [Hidalgo] offering to provide United States Savings Bonds to Deangelo Carroll and/or his family.
This quoted portion of the notices includes a number of specific factual allegations. But the State's repeated use of "and/ or" to connect the numerous allegations undercuts rather than bolsters the notices' specificity. The State is permitted to plead alternative fact scenarios for supporting an aggravator, but the notice of intent must still be coherent, with a clear statement of the facts and how the facts support the aggravator. The notices here are not a clear statement of how the facts support the aggravator.
When a notice connects a string of facts with "and/or," it permits the finding of the aggravator based on any of the facts taken separately as well as together. If the State pleads its notice in this manner, each separate fact must support the aggravator, not just any of the facts taken together. The notices here fail in this regard. For example, the allegation that Hidalgo's father "indicat[ed] he would pay to have a person either beaten or killed" does not support a finding that Hadland's murder was committed for money or something of monetary value. That allegation, if its facts are separated by "or" rather than "and," does not allege that petitioners were even aware that Hidalgo's father was willing to pay for a beating or killing.[25]
Only after careful perusal does it appear to us that these accusations seem to fall into five basic theories. Due to the State's use of "and/or" to separate all the fact allegations, none of the theories is sufficiently specific to give petitioners the notice required by SCR 250(4)(c).
The first theory seems to be that petitioner Espindola and/or petitioner Hidalgo and/or petitioner Hidalgo's father procured Carroll to beat and/or kill Hadland. The charge does not set forth when, where, or how this procurement occurred and does not allege that money or anything of monetary value was implicated.
The second theory appears to be that petitioner Hidalgo's father indicated he would pay to have a person either beaten or killed. This charge vaguely alleges that an offer of money was made, but when, where, and how it was made, to whom, and in regard to what victim remain completely unspecified.
The third theory seems to be that petitioner Hidalgo's father procured the injury or death of Hadland to further the business of the Palomino Club, which Hidalgo's father allegedly owned. The victim is identified, and the purpose of furthering business indicates a motive of monetary gain. But there is no allegation as to how the business would be furthered, nor is there any allegation regarding when, where, how, or to whom the procurement was made.
Fourth, the State appears to theorize that petitioner Hidalgo told Carroll to come to work with bats and garbage bags; Carroll procured Counts and/or Taoipu to kill Hadland; Counts shot Hadland; petitioner Hidalgo and/or petitioner Espindola provided $6,000 to Carroll to pay Counts; and Counts received the money. The crux of this charge seems to be that one or both of the petitioners paid Counts via Carroll for Hadland's murder, but the notice fails to specify when, where, or how the discussions and exchanges of money took place, what linked the exchanges to the murder, and whether Espindola knew Hidalgo paid someone, or vice versa. There is no allegation that before Hadland's death Carroll or Counts had been promised any remuneration or even expected any. Meanwhile, the allegations that Hidalgo told Carroll to bring bats and garbage bags to work and that Carroll procured Taoipu are not shown to support the theory.
The fifth apparent theory actually contains multiple subtheories of its own: petitioner *1197 Espindola provided $200 to Carroll; petitioner Espindola and/or petitioner Hidalgo provided $1,400 and/or $800 to Carroll; petitioner Espindola agreed to continue paying Carroll for working at the Palomino Club even though Carroll no longer worked there; and/or petitioner Hidalgo offered to provide savings bonds to Carroll and/or his family. Again, the notice fails to identify: when, where, or how any of the various sums of money were paid; when, where, or how petitioner Espindola and Carroll reached their agreement or whether any phony wages were ever paid; or when, where, or how the offer of savings bonds was made. Nor does it specify how any of these alleged events could be connected to the murder, e.g., whether someone made express references to the murder before or during the exchanges.
Thus, none of the allegations in the notices, taken together or separately, are sufficiently complete to support the third aggravator charged against each petitioner, and the third aggravators must therefore be stricken. As no valid aggravators remain, we conclude the notices of intent to seek the death penalty must be stricken.

CONCLUSION
For the reasons stated above, we grant this petition. The clerk of this court shall issue a writ of mandamus directing the district court to strike the notices of intent to seek the death penalty.
MAUPIN, C.J., concurring in part and dissenting in part:
The majority correctly concludes that, under SCR 250, the imprecise language of the State's notices of intent to seek the death penalty is insufficient to allege the aggravating circumstance defined by NRS 200.033(6), i.e., that "[t]he murder was committed by a person, for himself or another, to receive money or any other thing of monetary value." However, I would hold that the crime of solicitation to commit murder necessarily involves the communication of a "threat of violence to the person of another."[1] I do not read NRS 200.033(2)(b) to require that such a "threat of violence" must be perceived by the intended victim. Rather, I understand the aggravating circumstance to encompass a threat of violence that is communicated to another regardless of whether the threatened victim is aware of it. Therefore, I dissent from the majority's conclusion that the aggravating circumstances alleged against petitioners under NRS 200.033(2)(b) must be stricken.
NOTES
[1] In response to the State's argument that counsel for petitioner Luis Hidalgo III has an impermissible conflict of interest due to his representation of Hidalgo's father in an unrelated matter, Hidalgo has moved this court to file certain exhibits under seal. Cause appearing, we grant the motion. Based on the affidavits submitted by Hidalgo, his counsel, and Hidalgo's father, we perceive no current or potential conflict sufficient to warrant counsel's disqualification at this time. See RPC 1.7. The State may renew its motion below in the future, however, if such a conflict arises.
[2] NRS 200.033(2) permits the State to allege as an aggravating circumstance under NRS 200.033(2)(b) any felony involving the use or threat of violence that is charged in the same indictment or information as the first-degree murder count. Specifically, the statute provides, "For the purposes of this subsection, a person shall be deemed to have been convicted at the time the jury verdict of guilt is rendered. . . ."
[3] Redeker v. Dist. Ct., 122 Nev. 164, 167, 127 P.3d 520, 522 (2006); see also NRS 34.160.
[4] NRS 34.170; Redeker, 122 Nev. at 167, 127 P.3d at 522.
[5] Redeker, 122 Nev. at 167, 127 P.3d at 522.
[6] Id.
[7] 108 Nev. 200, 202, 826 P.2d 952, 954 (1992) (quoting People v. Miley, 158 Cal.App.3d 25, 204 Cal.Rptr. 347, 352 (1984)).
[8] 122 Nev. at 175, 127 P.3d at 527.
[9] 636 So.2d 1312, 1314 (Fla.1994).
[10] 864 So.2d 1151, 1152-53 (Fla.Dist.Ct.App. 2003) (citations omitted).
[11] 191 Ariz. 372, 956 P.2d 499, 502 (1998).
[12] Id. (quoting Ariz.Rev.Stat. § 13-703(F)(2)).
[13] Id.
[14] See Redeker, 122 Nev. at 172, 127 P.3d at 525.
[15] 636 So.2d at 1314; Fla. Stat. Ann. § 777.04(2), (4)(b) (West 1991). Nevada's solicitation statute similarly particularizes solicitation to commit murder: NRS 199.500(2) makes solicitation of murder a felony, while NRS 199.500(1) provides that solicitation of kidnapping or arson is a gross misdemeanor.
[16] 956 P.2d at 503.
[17] Woodruff v. State, 846 P.2d 1124, 1144 (Okla. Crim.App.1993).
[18] People v. Edelbacher, 47 Cal.3d 983, 254 Cal. Rptr. 586, 766 P.2d 1, 8, 15 (1989).
[19] 121 Nev. 554, 119 P.3d 107 (2005).
[20] Id. at 586, 119 P.3d at 129.
[21] Id.
[22] Id.
[23] Id.
[24] Redeker v. Dist. Ct., 122 Nev. 164, 168-69, 127 P.3d 520, 523 (2006).
[25] The State is correct that the aggravator applies to a defendant who pays another to commit a murder, not just the person who commits the murder and receives the financial gain  provided the notice of intent sets forth sufficient facts to support the theory. See Wilson v. State, 99 Nev. 362, 376-77, 664 P.2d 328, 337 (1983).
[1] NRS 200.033(2)(b).