184 P.3d 369 (2008)
Luis HIDALGO, III, Petitioner,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, in and for the COUNTY OF CLARK, and the Honorable Donald M. Mosley, District Judge, Respondents, and
The State of Nevada, Real Party in Interest.
No. 48233.
Supreme Court of Nevada.
May 29, 2008.
*371 Gordon & Silver, Ltd., and Dominic P. Gentile and Paola M. Armeni, Las Vegas, for Petitioner.
Catherine Cortez Masto, Attorney General, Carson City; David J. Roger, District Attorney, Steven S. Owens, Chief Deputy District Attorney, Giancarlo Pesci, Marc P. DiGiacomo, and Nancy A. Becker, Deputy District Attorneys, Clark County, for Real Party in Interest.
Michael Pescetta, Assistant Federal Public Defender, Las Vegas; Philip J. Kohn, Public Defender, and Howard Brooks, Deputy Public Defender, Clark County; David M. Schieck, Special Public Defender, Clark County, for Amici Curiae Federal Public Defender for District of Nevada, Nevada Attorneys for Criminal Justice, Clark County Public Defender, and Clark County Special Public Defender.
BEFORE THE COURT EN BANC.

OPINION ON REHEARING
PER CURIAM:
On December 27, 2007, this court issued an opinion in this case granting a petition for a writ of mandamus.[1] Subsequently, the real party in interest filed a rehearing petition. On February 21, 2008, this court withdrew the prior opinion pending resolution of the petition for rehearing. After reviewing the *372 rehearing petition and answer, as well as the briefs and appendix, we conclude that rehearing is warranted under NRAP 40(c)(2), and we grant the petition for rehearing. We now issue this opinion in place of our prior opinion.
In this opinion, we consider whether solicitation to commit murder is a felony involving the use or threat of violence to the person of another within the meaning of the death penalty aggravator defined in NRS 200.033(2)(b). We conclude that it is not. We also consider whether the State's notice of intent to seek the death penalty against petitioner satisfies the requirements of SCR 250(4)(c). We conclude that it does not. However, we conclude that the State should be allowed to amend the notice of intent to cure the deficiency. Accordingly, we grant the writ petition in part and instruct the district court to strike the two aggravating circumstances alleging solicitation to commit murder as prior violent felonies pursuant to NRS 200.033(2) and to allow the State to amend its notice of intent to seek the death penalty with respect to the factual allegations supporting the pecuniary gain aggravator.[2]

FACTS
Petitioner Luis Hidalgo III is awaiting trial on one count of conspiracy to murder Timothy Hadland, one count of first-degree murder for Hadland's death (under alternative theories of principal, aiding and abetting, and coconspirator liability), and two counts of solicitation to commit the murders of two alleged witnesses to Hadland's death. The State subsequently filed a timely notice of intent to seek the death penalty alleging three aggravating circumstances. The first and second aggravators are based on NRS 200.033(2)(b) and allege the two solicitation counts, assuming Hidalgo is found guilty of them, as prior felonies involving the use or threat of violence to another person.[3] The third aggravator alleges that Hadland's murder was committed by a person, for himself or another, to receive money or any other thing of monetary value pursuant to NRS 200.033(6).
On December 12, 2005, Hidalgo moved the district court to strike the State's notice of intent. The district court heard argument on the motion in March and September of 2006 and denied the motion from the bench on September 8, 2006. This original petition challenges the district court's ruling.[4]

DISCUSSION
"This court may issue a writ of mandamus to compel the performance of an act which the law requires as a duty resulting from an office or where discretion has been manifestly abused or exercised arbitrarily or capriciously."[5] The writ will issue where the petitioner has no "plain, speedy and adequate remedy in the ordinary course of law."[6] The decision to entertain a mandamus petition lies within the discretion of this court, and this court considers whether "judicial economy and sound judicial administration *373 militate for or against issuing the writ."[7] "Additionally, this court may exercise its discretion to grant mandamus relief where an important issue of law requires clarification."[8] The instant petition presents such issues. Further, considerations of judicial economy militate in favor of exercising our discretion to intervene by way of extraordinary writ at this time. Therefore, we have addressed the merits of the petition in this opinion.
Aggravators one and two: solicitation to commit murder as a prior felony involving the use or threat of violence under NRS 200.033(2)(b)
Hidalgo argues that solicitation to commit murder cannot serve as a prior-violent-felony aggravating circumstance because it is not "[a] felony involving the use or threat of violence to the person of another" within the meaning of NRS 200.033(2)(b). We agree.
The crime of solicitation to commit murder is defined in NRS 199.500(2), which provides that "[a] person who counsels, hires, commands or otherwise solicits another to commit murder, if no criminal act is committed as a result of the solicitation, is guilty" of a felony. The elements of solicitation do not involve the use of violence to another, regardless of the crime solicited. The remaining question is whether solicitation of a violent crime can be considered an offense involving the threat of violence to the person of another. We conclude that it cannot.
As this court observed in Sheriff v. Schwarz, "[u]nlike other criminal offenses, in the crime of solicitation, `the harm is the asking  nothing more need be proven.'"[9] Solicitation is criminalized, of course, because it carries the risk or possibility that it could lead to a consummated crime. But as this court stated in Redeker v. District Court, a risk or potential of harm to others "does not constitute a `threat' under NRS 200.033(2)(b)."[10]
Other jurisdictions have concluded that solicitation to commit murder cannot support an aggravator based on a prior felony involving the use or threat of violence to another person. For instance, in Elam v. State, the Supreme Court of Florida held that solicitation to commit murder could not support an aggravator based on a prior felony involving the use or threat of violence to the person, concluding that "[a]ccording to its statutory definition, violence is not an inherent element" of solicitation.[11] Citing Elam and other precedent, a Florida appellate court reached a similar conclusion in Lopez v. State that the crime of solicitation does not itself involve a threat of violence:
"The gist of criminal solicitation is enticement" of another to commit a crime. No agreement is needed, and criminal solicitation is committed even though the person solicited would never have acquiesced to the scheme set forth by the defendant. Thus, the general nature of the crime of solicitation lends support to the conclusion that solicitation, by itself, does not involve the threat of violence even if the crime solicited is a violent crime.[12]
The Supreme Court of Arizona addressed this issue in State v. Ysea.[13] The Ysea court considered whether solicitation to commit aggravated assault could support the aggravating factor of a prior felony involving "`the use or threat of violence on another person.'"[14] The court concluded that it could not because the statutory definition of solicitation did not require an act or a threat of violence as an element of the crime.[15]
*374 The decisions in Elam, Lopez, and Ysea are not precisely on point because those courts relied on the statutory elements of the crime of solicitation, whereas we have held that the sentencer can look beyond the statutory elements to the charging documents and jury instructions to determine whether a prior felony conviction, after trial, involved the use or threat of violence.[16] However, the court in Elam dealt with a Florida statute that particularized solicitation to commit a capital felony.[17] And the courts in both Lopez and Ysea expressly concluded that regardless of the violent nature of the crime solicited, solicitation itself is not a crime involving a threat of violence.
Obviously, the nature of the crime Hidalgo allegedly solicited is itself violent. But this does not transform soliciting murder into threatening murder within our view of the meaning of the statute. As the Ysea court put it, "the mere solicitation to commit an offense cannot be equated with the underlying offense. . . . [S]olicitation is a crime of communication, not violence, and the nature of the crime solicited does not transform the crime of solicitation into an aggravating circumstance."[18]
The State claims that California and Oklahoma both allow solicitation to commit murder to support a prior-violent-felony aggravator. However, the cases the State cites are not helpful to the State's position. The defendant in the Oklahoma case stipulated that his two prior convictions involved the use or threat of violence, and the case contains no useful analysis of this issue.[19] In the California case, while the defendant was in jail awaiting trial on a charge of killing his wife by lying in wait, he solicited a friend to murder a witness by lying in wait. Evidence of the solicitation was admitted not to establish any prior violent felony, but as proof of the defendant's consciousness of guilt and that he killed his wife while lying in wait.[20]
We conclude that the threat provision of NRS 200.033(2)(b) was meant to apply in cases like Weber v. State,[21] which the State cites for the proposition that force need not be an element of the crime underlying the prior-violent-felony aggravator. In Weber, we upheld two prior-violent-felony aggravators based on sexual assaults of a minor girl.[22] We noted that the elements of sexual assault do not include the use or threat of violence, and we concluded there was "no evidence of overt violence or overt threats of violence by Weber" against the victim during the two assaults.[23] But we also concluded that the evidence showed "at least implicit" threats of violence that were perceived by the minor girl herself and enabled the sexual assaults to occur.[24] We therefore concluded that the sexual assaults could properly support the aggravator.[25] In this case, there are no allegations that Hidalgo made threats of violence, implicit or explicit, that were perceived as such by the intended victims.
We conclude that solicitation to commit murder, although it solicits a violent act, is not itself a felony involving the use or threat of violence within the meaning of NRS 200.033(2)(b). We therefore conclude that the first two aggravators must be stricken.
Aggravator three: murder to receive money or any other thing of monetary value under NRS 200.033(6)
Hidalgo argues that the State's notice of intent to seek the death penalty violates *375 SCR 250 in alleging the third aggravating circumstance pursuant to NRS 200.033(6)"[t]he murder was committed by a person, for himself or another, to receive money or any other thing of monetary value." SCR 250(4)(c) provides that the notice of intent to seek death "must allege all aggravating circumstances which the state intends to prove and allege with specificity the facts on which the state will rely to prove each aggravating circumstance." Furthermore, "a defendant cannot be forced to gather facts and deduce the State's theory for an aggravating circumstance from sources outside the notice of intent to seek death. Under SCR 250, the specific supporting facts are to be stated directly in the notice itself."[26]
The State's notice alleges in pertinent part:
The murder was committed by a person, for himself or another, to receive money or any other thing of monetary value, to-wit by: by [Espindola] (a manager of the PALOMINO CLUB) and/or [Hidalgo] (a manager of the PALOMINO CLUB) and/or Luis Hidalgo, Jr. (the owner of the PALOMINO CLUB) procuring DEANGELO CARROLL (an employee of the PALOMINO CLUB) to beat and/or kill TIMOTHY JAY HADLAND; and/or LUIS HIDALGO, JR. indicating that he would pay to have a person either beaten or killed; and/or by LUIS HIDALGO, JR. procuring the injury or death of TIMOTHY JAY HADLAND to further the business of the PALOMINO CLUB; and/or [Hidalgo] telling DEANGELO CARROLL to come to work with bats and garbage bags; thereafter, DEANGELO CARROLL procuring KENNETH COUNTS and/or JAYSON TAOIPU to kill TIMOTHY HADLAND; thereafter, by KENNETH COUNTS shooting TIMOTHY JAY HADLAND; thereafter, [Hidalgo, Jr.] and/or [Espindola] providing six thousand dollars ($6,000) to DEANGELO CARROLL to pay KENNETH COUNTS, thereafter, KENNETH COUNTS receiving said money; and/or by [Espindola] providing two hundred dollars ($200) to DEANGELO CARROLL and/or by [Espindola] and/or [Hidalgo] providing fourteen hundred dollars ($1400) and/or eight hundred dollars ($800) to DEANGELO CARROLL and/or by [Espindola] agreeing to continue paying DEANGELO CARROLL twenty-four (24) hours of work a week from the PALOMINO CLUB even though DEANGELO CARROLL had terminated his position with the club and/or by [Hidalgo] offering to provide United States Savings Bonds to DEANGELO CARROLL and/or his family.
This quoted portion of the notice includes a number of specific factual allegations. But the State's repeated use of "and/ or" to connect the numerous allegations undercuts rather than bolsters the notice's specificity. The State is permitted to plead alternative fact scenarios in support of an aggravator, but the notice of intent must still be coherent, with a clear statement of the facts and how the facts support the aggravator. The notice here is not a clear statement of how the facts support the aggravator. When a notice connects a string of facts with "and/or," it permits the finding of the aggravator based on any of the facts taken separately as well as together. If the State pleads its notice in this manner, each separate fact must support the aggravator, not just any of the facts taken together. The notice here, however, fails in this regard.
SCR 250(4)(c) is "intended to ensure that defendants in capital cases receive notice sufficient to meet due process requirements."[27] In interpreting whether the manner in which a notice of intent is pleaded satisfies the due process concerns of SCR 250(4)(c), we look to other notice pleading requirements for guidance. A charging document in a criminal case, for example, serves a similar purpose to a notice of intent. NRS 173.075 provides that a charging document "must be a plain, concise and definite written statement of the essential facts constituting the offense charged." To satisfy this requirement, "the [charging document] standing alone must contain the elements of the *376 offense intended to be charged and must be sufficient to apprise the accused of the nature of the offense so that he may adequately prepare a defense."[28] Although there are obvious differences in the purposes of a charging document and a notice of intent to seek the death penalty, their primary function is the same, i.e., to provide the defendant with notice of what he must defend against at trial and a death penalty hearing, respectively.
Although the State is not required to include exhaustively detailed factual allegations to satisfy SCR 250(4)(c), the notice of intent must provide a simple, clear recitation of the critical facts supporting the alleged aggravator, presented in a comprehensible manner. Here, the principal problem with the notice of intent in this case is not the lack of factual detail. Rather, the State has alleged the factual allegations supporting the pecuniary gain aggravator in an incomprehensible format such that it fails to meet the due process requirements of SCR 250(4)(c).
In addition to the confusing "and/or" format, one example of a lack of clarity in the notice of intent appears in the State's allegation that "[Hidalgo's father] procure[ed] the injury or death of [Hadland] to further the business of the PALOMINO CLUB." Although this allegation identified a victim and asserted that the murder was motivated by monetary gain, i.e., furthering the business, it lacked sufficient specificity because it failed to explain how the business would be furthered by Hadland's murder. The submissions before this court indicate that Hadland verbally discouraged cab drivers from bringing customers to the Palomino Club and that the Club had suffered a marked decline in business as a result. However, absent from the notice of intent is any fact explaining how Hadland's murder benefited the Palomino Club's business interest. We conclude that the phrase in the notice of intent "to further the business" is impermissibly vague. As the State may amend its notice of intent, it must provide specific factual allegations as to how Hadland's murder furthered the business interests of the Palomino Club if the State intends to pursue this factual allegation at trial.
Although the notice of intent fails to clearly explain the factual allegations supporting the pecuniary gain aggravator, we conclude that the State should be allowed to amend the notice of intent to remedy the deficiency. Allowing the State to amend the notice to remedy any confusion, vagueness, or ambiguity present in the pecuniary gain aggravator will not prejudice Hidalgo or render subsequent proceedings unfair. By amending the notice, the State will not be including events or circumstances not already alleged in the notice. Rather, the State would be merely clarifying factual allegations in the notice.
Further, allowing the State to amend the notice of intent under the particular facts of this case would not contravene any statute or decision by this court. We have published only two decisions in which we struck notices of intent to seek the death penalty that were not compliant with SCR 250(4)(c)  Redeker v. District Court[29] and State v. District Court (Marshall).[30] However, both of these cases are distinguishable from the instant case.
In Redeker, this court concluded that the State's notice of intent to seek the death penalty failed to allege with specificity any facts showing that Redeker had been convicted previously of a felony involving the use or threat of violence to the person of another.[31] In particular, the State alleged that Redeker had been convicted of second-degree arson; however, although the notice of intent clearly identified the crime by title, date, location, case number, and victim, none of the allegations *377 indicated that the second-degree arson was a crime of violence or threatened violence to the person of another.[32] We rejected the State's suggestion that it be allowed to amend its notice of intent to allege additional facts in the same manner as it would amend a charging document.[33] In doing so, we observed that the State had opposed Redeker's contention that aggravators must be alleged in a charging document based on a probable cause determination and indicated that the State's position was inconsistent with its argument that it be allowed to amend the notice of intent as it would a charging document: "[T]he State proposes that we allow it to evade the charging requirements of SCR 250 but enjoy the benefits, while avoiding the burdens, of the indictment/information process."[34]
Redeker is distinguishable from the instant case. In Redeker, this court concluded that the notice of intent compelled Redeker to speculate about facts not included in the notice of intent that would have established that his second-degree arson conviction was a violent felony.[35] Here, the issue is not that the notice of intent lacked factual specificity, compelling Hidalgo to speculate about evidence beyond what was included in the notice of intent. Rather, our overarching concern in this case is that the State's factual allegations as pleaded are unclear and confusing. Further, this court's rejection of the State's argument in favor of amending the notice of intent in Redeker is unique to the particular circumstances in that case. Moreover, in Redeker, we concluded that even if the State had included specific factual allegations it believed established Redeker's second-degree arson conviction as a crime involving the threat or use of violence to another person, the factual allegations failed to support the aggravator.[36]
We reject any interpretation of Redeker as suggesting that the State can never amend a notice of intent to cure any deficiencies in the factual allegations supporting an aggravator where, as here, they are not pleaded in a clear and comprehensible manner. Therefore, we expressly limit the holding in Redeker to the particular facts and circumstances in that case.
The other published decision in which this court struck a notice of intent based on SCR 250(4)(c) is State v. District Court (Marshall), where we upheld a district court's decision to deny the State's motion to file untimely notices of intent to seek the death penalty against two defendants.[37]Marshall thus focused on the timing requirement in SCR 250(4)(c) rather than the sufficiency of the notice. Here, Hidalgo was made aware by the filing of a timely notice of intent that the State intended to seek the death penalty and the factual allegations supporting the pecuniary gain aggravator.
To the extent Hidalgo contends that allowing the State to amend the notice of intent would render the notice untimely without a showing of good cause, we find that argument unpersuasive under the particular facts of this case. SCR 250(4)(d) provides that "[u]pon a showing of good cause, the district court may grant a motion to file a late notice of intent to seek the death penalty or of an amended notice alleging additional aggravating circumstances." (Emphasis added.) Here, the State is not seeking to amend its notice of intent to allege new aggravators but rather to clarify the factual allegations supporting the pecuniary gain aggravator, which was alleged in a timely notice of intent. This circumstance sets Hidalgo's case apart from the situation in Marshall, where the State simply neglected to follow SCR 250(4)(c)'s timing requirement and failed to demonstrate good cause for the delay.[38]
Although the notice of intent is deficient under SCR 250(4)(c) to the extent that it fails to provide a clear, comprehensible expression of the factual allegations to support the pecuniary gain aggravator, we conclude that the *378 appropriate remedy is to allow the State to amend the notice of intent to cure this deficiency. We further conclude that allowing the State to amend the notice of intent to further explain its allegation that Hadland's murder served to further the business interests of the Palomino Club will not violate Hidalgo's due process rights.

CONCLUSION
For the reasons stated above, we grant this petition in part. The clerk of this court shall issue a writ of mandamus instructing the district court to strike the two aggravating circumstances alleging solicitation to commit murder as prior violent felonies pursuant to NRS 200.033(2) and to allow the State to amend its notice of intent to seek the death penalty to declare the factual allegations supporting the pecuniary gain aggravator in a clear, comprehensible manner and to further explain its allegation that the victim's murder served to further the business interests of the Palomino Club.
MAUPIN, J., concurring in part and dissenting in part:
The majority correctly concludes that, under SCR 250, the imprecise language of the State's notice of intent to seek the death penalty fails to clearly explain how the facts alleged support the aggravating circumstance defined by NRS 200.033(6), i.e., that "[t]he murder was committed by a person, for himself or another, to receive money or any other thing of monetary value." I further concur with the majority that the State should be allowed to amend the notice of intent to remedy this deficiency. However, I would hold that the crime of solicitation to commit murder necessarily involves the communication of a "threat of violence to the person of another."[1] I do not read NRS 200.033(2)(b) to require that such a "threat of violence" must be perceived by the intended victim. Rather, I understand the aggravating circumstance to encompass a threat of violence that is communicated to another regardless of whether the threatened victim is aware of it. Therefore, I dissent from the majority's conclusion that the aggravating circumstances alleged against petitioner under NRS 200.033(2)(b) must be stricken.
NOTES
[1] Hidalgo v. Dist. Ct., 123 Nev. ___, 173 P.3d 1191 (2007) (opinion withdrawn February 21, 2008).
[2] In response to the State's argument that counsel for petitioner Luis Hidalgo III has an impermissible conflict of interest due to his representation of Hidalgo's father in an unrelated matter, Hidalgo has moved this court to file certain exhibits under seal. Cause appearing, we grant the motion. Based on the affidavits submitted by Hidalgo, his counsel, and Hidalgo's father, we perceive no current or potential conflict sufficient to warrant counsel's disqualification at this time. See RPC 1.7. The State may renew its motion below in the future, however, if such a conflict arises.
[3] NRS 200.033(2) permits the State to allege as an aggravating circumstance any felony involving the use or threat of violence that is charged in the same indictment or information as the first-degree murder count. Specifically, the statute provides that "[f]or the purposes of this subsection, a person shall be deemed to have been convicted at the time the jury verdict of guilt is rendered."
[4] Anabel Espindola was charged with the same offenses and given notice of the same aggravators as Hidalgo. On April 9, 2008, we granted Espindola's motion to dismiss her from this original proceeding because she had reached a plea agreement with the State.
[5] Redeker v. Dist. Ct., 122 Nev. 164, 167, 127 P.3d 520, 522 (2006); see also NRS 34.160.
[6] NRS 34.170; Redeker, 122 Nev. at 167, 127 P.3d at 522.
[7] Redeker, 122 Nev. at 167, 127 P.3d at 522.
[8] Id.
[9] 108 Nev. 200, 202, 826 P.2d 952, 954 (1992) (quoting People v. Miley, 158 Cal.App.3d 25, 204 Cal.Rptr. 347, 352 (1984)).
[10] 122 Nev. at 175, 127 P.3d at 527.
[11] 636 So.2d 1312, 1314 (Fla.1994).
[12] 864 So.2d 1151, 1152-53 (Fla.Dist.Ct.App. 2003) (citations omitted).
[13] 191 Ariz. 372, 956 P.2d 499, 502 (1998).
[14] Id. (quoting Ariz.Rev.Stat. § 13-703(F)(2)).
[15] Id.
[16] See Redeker v. Dist. Ct., 122 Nev. 164, 172, 127 P.3d 520, 525 (2006).
[17] 636 So.2d at 1314; Fla. Stat. Ann. § 777.04(2), (4)(b) (West 1991). Nevada's solicitation statute similarly particularizes solicitation to commit murder: NRS 199.500(2) makes solicitation of murder a felony, while NRS 199.500(1) provides that solicitation of kidnapping or arson is a gross misdemeanor.
[18] 956 P.2d at 503.
[19] Woodruff v. State, 846 P.2d 1124, 1144 (Okla. Crim.App.1993).
[20] People v. Edelbacher, 47 Cal.3d 983, 254 Cal. Rptr. 586, 766 P.2d 1, 8, 15 (1989).
[21] 121 Nev. 554, 119 P.3d 107 (2005).
[22] Id. at 586, 119 P.3d at 129.
[23] Id.
[24] Id.
[25] Id.
[26] Redeker v. Dist. Ct., 122 Nev. 164, 168-69, 127 P.3d 520, 523 (2006).
[27] State v. Dist. Ct. (Marshall), 116 Nev. 953, 959, 11 P.3d 1209, 1212 (2000).
[28] Laney v. State, 86 Nev. 173, 178, 466 P.2d 666, 669 (1970); see Sheriff v. Levinson, 95 Nev. 436, 437, 596 P.2d 232, 233 (1979) ("[T]he prosecution is required to make a definite statement of facts constituting the offense in order to adequately notify the accused of the charges and to prevent the prosecution from circumventing the notice requirement by changing theories of the case.").
[29] 122 Nev. 164, 127 P.3d 520 (2006).
[30] 116 Nev. 953, 11 P.3d 1209 (2000).
[31] 122 Nev. at 168, 127 P.3d at 523.
[32] Id.
[33] Id. at 169, 127 P.3d at 523.
[34] Id.
[35] Id. at 168-69, 127 P.3d at 523.
[36] Id. at 169, 127 P.3d at 523.
[37] 116 Nev. 953, 968, 11 P.3d 1209, 1218 (2000).
[38] Id. at 964, 11 P.3d at 1215.
[1] NRS 200.033(2)(b).